WEAVER, J.
In this case, we decide whether the Michigan Court of Appeals case, Romska v Opper, 234 Mich App 512; 594 NW2d 853 (1999), was correctly decided. After examination of the Romska decision regarding the scope of a release from liability, we overrule Romska to the extent that its holding precludes the use of parol evidence when an unnamed party asserts third-party-beneficiary rights based on broad language included in a release from liability and an ambiguity exists with respect to the intended scope of that release. Accordingly, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals, which heavily relied on Romska, and remand this case to the trial court for further proceedings.
I. FACTS AND PROCEDURAL BACKROUND
Plaintiff, Thomas Shay,[1] alleged that he was assaulted by Melvindale and Allen Park police officers. On the day of the alleged assault, Officers John Aldrich and William Plemons of the Melvindale Police Department visited plaintiff at his home in response to a car alarm. After speaking with plaintiff, Officers Aldrich and Plemons left the home. They returned later that day, accompanied by Officer Joseph Miller of the Melvindale Police Department. In addition to the Melvindale police *652 officers, two officers from the Allen Park Police Department, Wayne Allbright (or Albright) and Kevin Locklear, were present. Plaintiff alleged that Officer Aldrich struck him and he fell to the ground. Plaintiff further alleged that other officers present assaulted him after he fell.
Plaintiff filed suit, naming five defendants: Officers Aldrich, Plemons, and Miller (“the Melvindale Officers”), as well as Officers Allbright and Locklear (“the Allen Park Officers”). With respect to the Melvindale Officers, plaintiff alleged that they committed an assault and battery. As for the Allen Park Officers, plaintiff alleged that their inaction during the alleged assault amounted to gross negligence.
The Melvindale and Allen Park Officers, and their respective municipalities, were covered by different insurance companies and different insurance polices. Additionally, the Melvindale and Allen Park Officers, and their respective municipalities, were represented by separate defense counsel. Plaintiff, the Melvindale Officers, and the Allen Park Officers agreed to appear for a case-evaluation hearing. After the hearing, the following awards, based on each defendant’s respective liability, were issued: $500,000 against Melvindale Officer Aldrich, $500,000 against Melvindale Officer Plemons, $450,000 against Melvindale Officer Miller, $12,500 against Allen Park Officer Allbright, and $12,500 against Allen Park Officer Locklear.
Plaintiff accepted the case-evaluation awards against the Allen Park Officers, and both Allen Park Officers agreed to the awards. Plaintiff additionally accepted the case-evaluation award against Melvindale Officer Miller, but rejected the case-evaluation awards against Melvindale Officers Aldrich and Plemons. All three of the Melvindale Officers rejected the case-evaluation *653 awards. Accordingly, the Allen Park Officers were dismissed from the case, while a trial date was set for the remaining defendants, the three Melvindale Officers.
Plaintiff executed two releases, one naming Allen Park Officer Allbright and one naming Allen Park Officer Locklear. The two releases were identical in all respects except for the named Allen Park Officer indicated in the document. The release naming Officer Locklear read in part as follows:
For the sole consideration of TWELVE THOUSAND FIVE HUNDRED AND NO/100 ($12,500.00) DOLLARS to me in hand paid by Michigan Municipal Liability and Property Pool do for ourselves, executors, administrators, successors and assigns, discharge, ALLEN PARK POLICE OFFICER KEVIN LOCKLEAR and Michigan Municipal Liability and Property Pool, insurer, together with all other persons, firms and corporations, from any and all claims, demands and actions which I have now or may have arising out of any and all damages, expenses, and any loss or damage resulting from an incident occurring on September 8, 2004.
Each release also stated that “the execution of this agreement shall operate as a satisfaction of my claims against such other parties to the extent that such other parties are or may be entitled to recover, by way of contribution, indemnity, hen or otherwise, from the parties herein released.” Additionally, each release stated that plaintiff further agreed to “indemnify and hold harmless the above-named released and discharged parties ....” Plaintiff signed the releases, and the trial court entered a stipulated “Order for Dismissal with Prejudice as to Defendants, Allen Park Police Officer Albright and Allen Park Police Officer Locklear, Only.”
Approximately two months later, the Melvindale Officers moved for summary disposition under MCR 2.116(C)(7), relying on the Allen Park Officers’ re *654 leases. The Melvindale Officers asserted that the language “all other persons” contained in the releases effectively released them as well. The trial court denied the Melvindale Officers’ motion for summary disposition, agreeing with plaintiff that dismissal based on (C)(7) would only be proper if the releases had been executed before the commencement of plaintiff’s suit. Furthermore, the trial court ruled that the Melvindale Officers could only have relied on the releases if they had raised the language as a defense in their first responsive pleading.
The Melvindale Officers moved to amend their affirmative defenses in order to include the language of the releases as a defense. The Melvindale Officers relied heavily on Romska. In Romska, the Court of Appeals majority held that the language “all other parties” in a release was unambiguous and, therefore, there was “no need to look beyond the . . . language of the release” to determine its scope.[2] The Melvindale Officers argued that the language “all other persons” contained within the releases was clear and unambiguous, just as the language in the release in Romska was. Thus, the Melvindale Officers asserted that they too were released by the language “all other persons” and that parol evidence should not be used to determine the scope of the Allen Park Officers’ releases.
The trial court denied the Melvindale Officers’ motion to amend their affirmative defenses and rejected their argument that the language of the releases was broad enough to release them as well. The trial court instead found the releases to be ambiguous, noting that the names of the Allen Park Officers and their insurance carrier were in capital letters and bold type, which suggested the limiting nature of the language. This bold *655 type was used in both the first and last paragraphs of the releases, which the trial court reasoned was further indication that the releases were intentionally limited to the persons named in bold. The trial court additionally noted that the Melvindale Officers were not mentioned anywhere in the releases.
After concluding that the releases were ambiguous and, therefore, that parol evidence was admissible, the trial court noted that the dismissal order entered as a result of the releases was entitled “Order for Dismissal with Prejudice as to Defendants, Allen Park Police Officer Albright and Allen Park Police Officer Locklear, Only.” The order also indicated that the “entry of this Order does not resolve the last pending claim between the parties and does not close the case.” Additionally, the trial court acknowledged an affidavit from the attorney for the Allen Park Officers explaining that he had intended to negotiate the releases with plaintiff for the Allen Park Officers only.
The trial court further indicated that the amount of consideration for the releases indicated that they were not meant to dispose of claims against the Melvindale Officers. The case-evaluation awards against the Melvindale Officers totaled $1,450,000, while the releases were executed in exchange for the $25,000 combined case-evaluation amount against the Allen Park Officers. The trial court reasoned that it was unlikely that plaintiff would forgo his claims against the Melvin-dale Officers for just $25,000.
Plaintiff filed an emergency motion to reform the releases. However, before any decision on that motion, the Melvindale Officers filed an application for leave to appeal in the Court of Appeals. The Court of Appeals found Romska instructive and concluded *656 that the Allen Park Officers’ releases were unambiguous and must be applied as written.[3] The Court of Appeals therefore concluded that plaintiffs claims against the Melvindale Officers were barred.[4] The Court of Appeals reversed the trial court’s order denying the Melvindale Officers’ motion for summary disposition and remanded the case to the trial court for entry of judgment in favor of the Melvindale Officers.[5]
Plaintiff filed an application for leave to appeal in this Court. We ordered that oral argument be heard on the application, directing the parties to address “whether Romska v Opper, 234 Mich App 512 (1999), was correctly decided.”[6]
II. STANDARD OF REVIEW
This Court reviews de novo decisions on motions for summary disposition.[7] When determining whether a motion for summary disposition brought pursuant to MCR 2.116(C)(7) was properly decided, we consider all documentary evidence and accept the complaint as factually accurate unless affidavits or other documents presented specifically contradict it.[8] This issue also involves questions of law regarding the construction of a contract, which we review de novo as well.[9]
*657 III. ANALYSIS
A. THE ROMSKA DECISION
In Romska, the plaintiff was driving her car when she was struck by a car driven by Veliko Velikov.[10] Velikov hit the plaintiffs car after swerving to avoid a vehicle driven by the defendant, David Opper. [11] The plaintiff filed personal injury claims against both Velikov’s and Opper’s insurance carriers and was able to reach a settlement with Velikov’s carrier, Farm Bureau Insurance Company, for $45,000.[12] She executed a standard release form, releasing Farm Bureau, as well as “all other parties, firms, or corporations who are or might be liable.”[13]
The plaintiff was unable to reach a settlement with Opper’s carrier, American States Insurance Company.[14] As a result, the plaintiff filed suit against Opper himself.[15] Opper then moved for summary disposition, relying on the language “all other parties” in the Farm Bureau release.[16]
In a split decision, the Court of Appeals held that the language of the Farm Bureau release was unambiguous.[17] Because Opper could be classified within the phrase “all other parties, firms or corporations who are or might be liable,” the majority reasoned that there *658 was “no need to look beyond the plain, explicit, and unambiguous language of the release in order to conclude that he has been released from liability.”[18]
The majority noted that the plaintiff provided and received adequate consideration under the release and, thus, the release was valid.[19] Additionally, the majority gave weight to the existence of a merger clause within the release, reasoning that the clause dictated that “disputes concerning the release are to be resolved exclusively by the resort to the language of the release itself.”[20] Therefore, the majority concluded that in order to give effect to the merger clause, it must not consider extrinsic evidence that might have been otherwise considered had the merger clause not been included.[21]
The majority went on to reason that the settling parties likely included broad language in the release for the purpose of avoiding future legal burdens that could potentially arise out of lawsuits brought by the plaintiff against third parties.[22] The majority cautioned that finality might never be truly achieved through a release if even unambiguous release language, coupled with a merger clause, cannot effectively preclude such future lawsuits.[23]
In contrast, the partial dissent opined that when a “stranger” to a release seeks to apply broad language contained in a release to bar claims against the stranger, it is appropriate for a court to consider parol evidence of intent in order to determine the true scope *659 of the release.[24] The partial dissent noted that Michigan’s Legislature abolished in MCL 600.2925d the common-law principle that the release of one joint tortfeasor is the release of all.[25] The partial dissent opined that it would be fundamentally unfair to bar the plaintiffs claim against Opper on the basis of the broad release language because this would effectively deprive the plaintiff of a cause of action against a tortfeasor whom she did not intend to release.[26]
The partial dissent acknowledged that an unambiguous document must generally be interpreted “solely on the basis of the information contained within its four corners,” but it noted that this situation “is not always the case.”[27] The partial dissent concluded as follows:
Indeed, this Court, too, has stated that it agrees with “the majority of courts which hold that the parol evidence rule cannot be invoked either by or against a stranger to the contract.” Denha v Jacob, 179 Mich App 545, 550; 446 NW2d 303 (1989), citing 30 Am Jur 2d, Evidence, § 1031, pp 166-167. Therefore, because the parol evidence rule is operative only with respect to parties to a document, it cannot be invoked either by or against a stranger to the contract. Hence, in order to determine the intentions of the parties about the scope of a general release, extrinsic evidence should be allowed to determine whether a stranger may rely on the omnibus language “all other parties, firms, or corporations” that is contained within a release.[28]
B. WHETHER ROMSKA AND THIS CASE WERE CORRECTLY DECIDED
In Romska, the majority and partial dissent presented opposing views regarding a question critical to *660 the resolution of this matter: May a court properly consider extrinsic evidence of the settling parties’ intent regarding the scope of a release when a nonparty to the release attempts to rely on broad release language? We conclude that courts may consider extrinsic evidence of the intended scope of a release when an unnamed party seeks to enforce third-party-beneficiary rights based on the broad release language but the evidence presented establishes that an ambiguity exists with respect to the intended scope of the release.
At common law, the release of one joint tortfeasor effectively released all other joint tortfeasors.[29] In 1974, however, the Michigan Legislature abrogated the common-law rule and dictated by statute that the release of one joint tortfeasor from liability does not automatically release other joint tortfeasors from liability unless the terms of the release so provide.[30]
This Court has traditionally applied theories of contract law to disputes regarding the terms of a release.[31] “The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate.”[32] Generally, if the language of a contract is unambiguous, it is to be construed according to its plain meaning.[33] On the other hand, if the language of a contract is ambiguous, courts may consider extrinsic evidence to determine the intent of the parties.[34] Applying this principle, the Court of Appeals majority in Romska concluded that “[tjhere cannot be any broader classification than the word ‘all,’ and ‘all’ *661 leaves room for no exceptions.”[35] Therefore, the majority reasoned that it would be “inappropriate to look to parol evidence here in determining the scope of the release.”[36]
In this case, the trial court found the broad release language ambiguous and denied the Melvindale Officers’ motion for summary disposition after considering extrinsic evidence that neither plaintiff nor the Allen Park Officers had intended that the Melvindale Officers would also be released by the documents executed. The Court of Appeals, however, noted that the releases “use the same broad language as the release at issue in Romska, and they also employ the word ‘all.’ ”[37] Therefore, the Court of Appeals concluded that the trial court erred by considering extrinsic evidence of the intentions of plaintiff and the Allen Park Officers and ordered that judgment be entered for the Melvindale Officers.[38] We disagree with the Court of Appeals’ conclusion.
First and foremost, it is undisputed that the Melvin-dale Officers were not involved in the Allen Park Officers’ settlement negotiations with plaintiff, were not named in the executed releases, and did not sign the releases. The parties negotiating the releases included plaintiff and the Allen Park Officers only. Plaintiff presented an affidavit from counsel for the Allen Park Officers stating:
My only intent with regard to the Release, Settlement and Order of Dismissal was to release my clients, defendant Allen Park Officers Albright and Locklear, from liability in this matter for the consideration of the $25,000.00 Case Evaluation Award.
*662 Additionally, during oral argument in this Court, counsel for the Melvindale Officers conceded that plaintiff and the Allen Park Officers, as the only parties negotiating the releases, did not intend to release the Melvin-dale Officers.
The Melvindale Officers have not asserted that they were parties to the release negotiations and executions; rather, they simply seek to benefit from the boilerplate language contained in the Allen Park Officers’ releases. Again, the Melvindale Officers concede that neither plaintiff nor the Allen Park Officers intended to release them from liability.[39]
Acknowledging that they were not parties to the releases, the Melvindale Officers argue that they were nevertheless released from liability by the Allen Park Officers’ releases because they are third-party beneficiaries of the agreement between plaintiff and the Allen Park Officers. MCL 600.1405 governs the rights of third-party beneficiaries in Michigan and states, in pertinent part:
Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promise.
(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.
This Court has interpreted the applicable statutory language as follows:
*663 In describing the conditions under which a contractual promise is to be construed as for the benefit of a third party to the contract in § 1405, the Legislature utilized the modifier “directly.” Simply stated, section 1405 does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation “directly” to or for the person. This language indicates the Legislature’s intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.[40]
This Court has additionally explained that “a third-party beneficiary may be a member of a class, but the class must be sufficiently described.”[41] Thus, in order for the Melvindale Officers to qualify as third-party beneficiaries, the language of the releases must have demonstrated an undertaking by plaintiff directly for the benefit of the Melvindale Officers or for a sufficiently designated class that would include the Melvin-dale Officers.[42]
An objective standard must be used to determine from the release documents whether plaintiff executed the releases directly for the benefit of the Melvindale Officers.[43] The trial court did not conclude that the language used in the releases indicated that they were executed directly for the benefit of the Melvindale Officers. Instead, the trial court found that the language appeared intentionally limiting in nature, noting that the Allen Park Officers were named in bold font *664 while the Melvindale Officers were not named anywhere in the documents.
While the trial court acknowledged that the release in Romska contained similar broad language, it concluded that Romska was distinguishable from the present case for various reasons. The trial court noted that the Melvindale Officers rejected the case-evaluation awards against them, a trial date was set for them, and the court entered a consent order indicating that plaintiffs case was dismissed against the Allen Park Officers only. Therefore, it is undisputed that the Melvindale Officers remained parties to plaintiffs lawsuit after the Allen Park Officers were released.
The trial court correctly concluded that plaintiff, the Allen Park Officers, and the Melvindale Officers were aware that the Melvindale Officers would remain parties to plaintiffs lawsuit after the releases were executed. However, as previously explained, this Court has long held that the standard for determining whether a person is a third-party beneficiary is an objective standard and must be determined from the language of the contract only.[44] A majority of this Court has affirmed this rule in recent cases and further emphasized that the promise must be made directly for the person and, thus, that incidental beneficiaries of contracts could not recover.[45]
This rule reflects “the Legislature’s intent to ensure that contracting parties are clearly aware that the scope *665 of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.”[46] Although if taken out of context this sentence could be read to mean that the important inquiry is the subjective understanding of the contracting parties, when read in context, it is clear that contracting parties’ “intent” with regard to third-party beneficiaries is to be determined solely from the “form and meaning” of the contract.[47]
Given this Court’s long history of interpreting the third-party-beneficiary statute to require an objective interpretation of the language, we conclude that the Melvindale Officers qualify as third-party beneficiaries under the applicable statute because on its face, the release language unambiguously releases “all other persons.”
Once it has been determined that a party qualifies as a third-party beneficiary, we must address the significance of this determination. This Court has held that the significance of a party being recognized under the third-party-beneficiary statute is that the status confers on parties a cause of action and the right to sue.[48] A party who qualifies as a third-party beneficiary effectively “stands in the shoes” of the original promisee and “has the same right to enforce said promise that he *666 would have had if the said promise had been made directly to him as the promisee.”[49]
The third-party-beneficiary statute expressly provides that the rights of the third-party beneficiary are “subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject.”[50] Thus, a person who qualifies under the third-party-beneficiary statute gains the right to sue to enforce the contract. But in doing so, that person stands in the shoes of the original promisee and only gains the same right that the original promisee would have had. Accordingly, a third-party beneficiary is not automatically entitled to the sought-after benefit merely by qualifying as a third-party beneficiary. While a third-party beneficiary has the right to seek enforcement of a promise, courts must still apply basic principles of contract interpretation when determining the extent of the third party’s rights under the contract.[51]
Accordingly, an objective test is used to determine whether a third party is entitled to pursue a cause of action for enforcement of a contract promise, but that *667 same objective test does not also govern the interpretation of the contract. Instead, the usual principles of contract interpretation apply, and the promise is subject to the same “limitations” and “infirmities” as it would be if it were being enforced by the original promisee.[52] On the face of the release documents, the Melvindale Officers are third-party beneficiaries of the promise, i.e., the release from liability, and may seek to enforce it. Given that we have determined that the Melvindale Officers are third-party beneficiaries, we must now apply traditional principles of contract interpretation to determine the scope of the Melvindale Officers’ rights under the release.
As previously stated, releases are generally treated as contracts under Michigan law and, thus, subject to the parol evidence rule, which prohibits the use of extrinsic evidence to interpret unambiguous language within a document.[53] However, if a contract is ambiguous, then “extrinsic evidence is admissible to determine the actual intent of the parties.”[54]
An ambiguity may either be patent or latent. This Court has held that extrinsic evidence may not be used to identify a patent ambiguity because a patent ambiguity appears from the face of the document. However, extrinsic evidence may be used to show that a latent ambiguity exists.[55] With respect to a latent ambiguity, we have explained as follows:
*668 A latent ambiguity, however, is one “that does not readily appear in the language of a document, but instead arises from a collateral matter when the document’s terms are applied or executed.” Because “the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist. ”[56]
A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the “ ‘necessity for interpretation or a choice among two or more possible meanings.’ ”[57] To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation.[58] Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue.[59]
*669 The latent-ambiguity doctrine has a long history in Michigan law, as demonstrated by Ives v Kimball, 1 Mich 308, 313 (1849), in which this Court explained that a latent ambiguity may be shown by parol evidence:
There is no more useful, just and practical rule of law, than that which admits evidence of surrounding circumstances and collateral facts, within certain well defined limits, for the purpose of enabling courts to ascertain and carry into effect the intention of contracting parties. The cases in which this rule has been applied are almost innumerable.
This Court has applied the latent-ambiguity doctrine when extrinsic evidence demonstrates that there is an ambiguity concerning the identity of the intended beneficiary of a promise in a contract. In Hall v Equitable Life Assurance Society of the United States, in the context of an insurance contract, this Court stated “ ‘[w]here from the evidence which is introduced, there arises a doubt as to what party or parties are to receive the benefit of the policy, parol evidence is admissible to determine such fact.’ ”[60] In Hall, although the decedent’s insurance policy clearly named a certain person as the beneficiary, extrinsic evidence made it clear that the decedent had only intended to name that person temporarily, as a guardian, until he determined who would properly act as the guardian of his estate, but he died before being able to make that determination. This Court applied the latent-ambiguity doctrine and held that even though a specific person was unambiguously named in the policy, the proceeds would go to the estate generally.[61]
*670 In addition, this Court noted in Meyer v Shapton, 178 Mich 417, 425; 144 NW 887 (1914), that “parol evidence may be admitted to correct, identify, or explain the name given and party intended in writing as grantee, devisee, or promisee, not to pervert the written instrument, but to prevent the written instrument being perverted from the true intent of the contracting parties.”[62] In Meyer, one of the named parties in a contract of sale was a corporation that no longer existed, and, rather than voiding the contract, the Court examined the surrounding circumstances to determine who the intended party really was.[63]
We do not dispute that the Melvindale Officers are “persons,” as the term is used in the releases. In fact, it is possible that any person in the world could fall into this broadly defined group of “all other persons.” However, this conclusion alone does not dictate that we must apply the release language to the Melvindale Officers without even considering whether an ambiguity arises from the undisputed extrinsic evidence presented by plaintiff.[64] Courts are obligated in construing releases *671 such as those at issue, to effectuate the intent of the parties, and extrinsic evidence is admissible to the extent necessary to do so.[65]
Plaintiff presented extrinsic evidence to support his argument that the release language is ambiguous, including the following facts: (1) the Allen Park Officers and the Melvindale Officers were represented by different counsel, (2) it was expressly agreed that plaintiff would accept the combined $25,000 case-evaluation awards with respect to the Allen Park Officers, but would not accept the $1.5 million award with respect to the Melvindale Officers, (3) counsel for the Allen Park Officers explained to plaintiff that the releases were drafted in order to settle plaintiffs claims against his clients, (4) a stipulation and order dismissing the Allen Park Officers only was entered, and (5) the Melvindale Officers remained parties to plaintiffs lawsuit with a trial date set for plaintiff to proceed against them. The extrinsic evidence is further bolstered by the affidavit from counsel for the Allen Park Officers — the drafter of the releases — indicating that when he drafted the releases, he had not intended to provide for the release of the Melvindale Officers as well.
Again, a latent ambiguity has been described as one that “ ‘arises not upon the words of the will, deed or other instrument, as looked at in themselves, but upon *672 those words when applied to the object or to the subject which they describe.’ ”[66] “ ‘And where, from the evidence which is introduced, there arises a doubt as to what party or parties are to receive the benefit [of a contract], parol evidence is admissible to determine such fact.’ ”[67] “In construing [contractual] provisions due regard must be had to the purpose sought to be accomplished by the parties as indicated by the language used, read in the light of the attendant facts and circumstances.”[68] “Such intent when ascertained must, if possible, be given effect and must prevail as against the literal meaning of expressions used in the agreement.”[69]
The extrinsic evidence presented here is not disputed by the Melvindale Officers, and it undeniably reveals the clear intent of the parties. Furthermore, the language of the releases expressly contemplates a situation in which the Allen Park Officers might be liable by way of contribution or indemnity to another party. This language implies the existence of the continued lawsuit against other parties. Given the undisputed extrinsic facts that the Melvindale Officers remained parties to plaintiffs lawsuit and were former codefendants of the Allen Park Officers, it would be entirely reasonable for the Allen Park Officers to include language in the releases that would protect them from actions for contribution or indemnity by remaining parties. Considering the language of the releases and the extrinsic evidence presented, it is clear that the settling parties did not include the term “persons” in the releases in *673 order to effectuate an intent to release the Melvindale Officers from liability.
It is an elementary rule of construction of contracts that in case of doubt, a contract is to be strictly construed against the party by whose agent it was drafted.[70] However, the drafter here agrees with plaintiffs assertions about the intent of the settling parties. Not only are the settling parties in full agreement about their intent, but the Melvindale Officers do not even seriously contest this point and have expressed agreement with this same intent. There is no indication whatsoever that counsel for either the Allen Park Officers or the Melvindale Officers took any action in relation to this matter without their clients’ agreement. Any suggestions to the contrary are entirely unfounded.
This is simply not a case in which a stranger to a contract or release comes forward sometime after the formation of the contract or release and seeks to benefit from its terms. Instead, the Melvindale Officers were readily ascertainable codefendants in a pending lawsuit by plaintiff. In addition, this is not a case in which there is any legitimate dispute about the settling parties’ intent. Defendants do not even dispute the parties’ actual intent.
Under the facts of this case, if plaintiff were not permitted to present extrinsic evidence in order to ascertain the intent of the settling parties, the settling parties’ intent would undoubtedly be perverted.[71] Plaintiff would be deprived of his claim for assault and battery against the Melvindale Officers, which he expressly preserved by rejecting the case-evaluations awards assessed against them. In addition, counsel for *674 the Allen Park Officers would be deemed responsible for releasing the Melvindale Officers’ from liability when it was not his intention to do so. Further, the Melvindale Officers would obtain a complete windfall by being released from liability for their acts in exchange for no bargained-for promise and no consideration at all, despite the fact that they do not dispute that this was not the intent of the settling parties. Not only would this be an unjust result, it would be contrary to the cardinal rule of contract interpretation: that the contracting parties’ intent should control.[72]
In this case, plaintiff has shown that the circumstances surrounding the execution of the releases created a latent ambiguity about whom the parties intended to include within the scope of the releases. All the contracting parties agree that neither plaintiff nor the Allen Park Officers intended the releases to have any effect on the Melvindale Officers’ liability. Even the Melvindale Officers themselves did not believe that the releases were intended to include them.[73] Further, it is *675 illogical to think that plaintiff would have accepted the case-evaluation amounts for the Allen Park Officers as consideration for releasing all defendants when the claims against the Melvindale Officers had much larger case-evaluation amounts. Although on the face of the releases the Melvindale Officers are entitled as third-party beneficiaries to seek enforcement of the releases, the releases are subject to the same “limitations” and “infirmities” as they would have been if they had been made directly for those officers. This means that the release language must be subject to evidence of the latent ambiguity demonstrating that the Melvindale Officers are not included in plaintiffs release from liability of “all other persons.”
In sum, to determine whether an unnamed party is released from liability by broad or vague release language, the party’s status as a third-party beneficiary must be established by an objective analysis of the release language. However, traditional contract principles continue to apply to the release, and courts may consider the subjective intent of the named and unnamed parties to the release under certain circumstances, such as when there is a latent ambiguity. The third-party-beneficiary statute indicates that the Legislature intended to allow parties who are direct beneficiaries to sue to enforce their rights, but the statute expressly states that third-party beneficiaries have only the “same right” to enforce as they would if the promise had been made directly to them. MCL 600.1405. That is, the statute creates a cause of action, but it is not *676 intended to afford third parties greater rights than they would have if they had been the original promisee.
If this Court were to extend the objective test it has adopted for determining whether there is a third-party beneficiary to interpreting the scope of the rights of the third-party beneficiary, it would be contrary to the statute in instances in which, as here, because of the latent-ambiguity doctrine, the subjective intent of the party would be relevant to determining the party’s rights if the promise had been made directly to the party. Thus, while the objective approach for determining whether a party is a third-party beneficiary must be applied, traditional contractual principles, including the latent-ambiguity doctrine, must also be applied in order to determine the scope of the third-party beneficiary’s rights.
IV CONCLUSION
In lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and overrule Romska to the extent that it prohibits a court from considering extrinsic evidence of the intended scope of a release when an unnamed party seeks to enforce third-party-beneficiary rights based on broad language included in a release from liability and an ambiguity exists with respect to the intended scope of that release. Accordingly, we remand this case to the trial court for further proceedings in conformity with this opinion.
Reversed and remanded.
Kelly, C.J., and Cavanagh and Hathaway, JJ., concurred with Weaver, J.

 Thomas Shay died approximately four months after oral argument on his application for leave to appeal in this Court, and Nicole Shay, the personal representative of his estate, was substituted as plaintiff. References to “plaintiff” in this opinion are to Thomas Shay.

 Romska, 234 Mich App at 515-516.

 Shay v Aldrich, unpublished opinion per curiam of the Court of Appeals, issued March 5, 2009 (Docket No. 282550), pp 3-4.

 Id. at 4.

 Id. at 5.

 Shay v Aldrich, 485 Mich 911 (2009).

 Herald Co v Bay City, 463 Mich 111, 117; 614 NW2d 873 (2000).

 Kuznar v Raksha Corp, 481 Mich 169, 175-176; 750 NW2d 121 (2008).

 In re Egbert R Smith Trust, 480 Mich 19, 23-24; 745 NW2d 754 (2008).

 Romska, 234 Mich App at 513.

 Id.

 Id. at 513-514.

 Id. at 514.

 Id.

 Id.

 Id.

 Id. at 515. The Court of Appeals majority opinion was authored by then Judge Markman and joined by Judge Saad. Judge Hoekstra authored a partial concurrence and partial dissent.

 Id.

 Id. at 516.

 Id. at 516-517.

 Id.

 Id. at 517-518.

 Id.

 Id. at 533 (Hoekstra, J., concurring in part and dissenting in part).

 Id. at 527.

 Id. at 528.

 Id. at 531.

28 Id. at 533.

 Slater v Ianni Constr Co, 268 Mich 492, 494; 256 NW 495 (1934).

 MCL 600.2925d(a).

 See Denton v Utley, 350 Mich 332, 335-338; 86 NW2d 537 (1957).

 McIntosh v Groomes, 227 Mich 215, 218; 198 NW 954 (1924).

 Grosse Pointe Park v Mich Muni Liability & Prop Pool, 473 Mich 188, 197-198; 702 NW2d 106 (2005) (opinion by CAVANAGH, J.).

 Id. at 198.

 Romska, 234 Mich. App at 515-516.

 Id. at 516.

 Shay, unpub op at 4.

 Id. at 5.

 During oral argument, defense counsel conceded that neither plaintiff nor the Allen Park Officers intended to release the Melvindale Officers from liability. Nevertheless, defense counsel requested that this Court conclude that the broad release language created third-party-beneficiary rights in the Melvindale Officers.

40 Koenig v South Haven, 460 Mich 667, 676-677; 597 NW2d 99 (1999) (emphasis added).

 Id. at 680.

 See id. at 683.

 Brunsell v Zeeland, 467 Mich 293, 297-298; 651 NW2d 388 (2002).

 See, e.g., Guardian Depositors Corp v Brown, 290 Mich 433, 437; 287 NW 798 (1939) (stating that “[t]he standard which the legislature has prescribed for determining when a ‘promisor * * * has undertaken’ to perform or refrain from performing a given act, we think, is an objective one, determined from the form and meaning of the contract itself”).

 See Schmalfeldt v North Pointe Ins Co, 469 Mich 422, 428; 670 NW2d 651 (2003); Brunsell, 467 Mich at 296-298.

 Brunsell, 467 Mich at 297.

 See Koenig, 460 Mich at 680 (stating that “an objective standard is to be used to determine from the contract itself whether the promisor undertook ‘to give or to do or to refrain from doing something directly to or for’ the putative third-party beneficiary”) (citation omitted; emphasis omitted).

 See id. at 684, Lidke v Jackson Vibrators, Inc, 379 Mich 294, 300; 150 NW2d 737 (1967), and Guardian Depositors, 290 Mich at 442; see also Williams v Polgar, 391 Mich 6, 14; 215 NW2d 149 (1974) (recognizing third-party beneficiaries as an exception to the common-law privity rule).

 MCL 600.1405.

 MCL 600.1405(2)(a).

 See, e.g., Lidke, 379 Mich at 299-300 (affirming the trial court’s determination that the plaintiff was “entitled to maintain a cause of action” as a third-party beneficiary of a contract and proceeding to analyze the extent of the plaintiffs rights under the contract), Greenlees v Owen Ames Kimball Co, 340 Mich 670, 677; 66 NW2d 227 (1954) (remanding the case to the trial court to interpret the contract on the merits after this Court determined that the plaintiff was “entitled to maintain his cause of action under the third-party beneficiary statute”), and Szymanski v John Hancock Mut Life Ins Co, 304 Mich 483; 8 NW2d 146 (1943) (the named beneficiary of her deceased husband’s insurance contract was able to sue to attempt to enforce her rights but ultimately unable to recover because this Court determined that the promise she sought to enforce did not extend to the relief that she was seeking).

 See MCL 600.1405(2)(a).

 See, generally, Paul v Univ Motor Sales Co, 283 Mich 587; 278 NW 714 (1938).

 Grosse Pointe Park, 473 Mich at 198 (opinion by Cavanagh, J.).

 Id. at 198-201; McCarty v Mercury Metalcraft Co, 372 Mich 567, 575; 127 NW2d 340 (1964); Sault Ste Marie Tribe of Chippewa Indians v Granholm, 475 F3d 805, 812 (CA 6, 2007) (applying the “well-settled tenet of Michigan contract law” that extrinsic evidence may be admitted to identify and interpret a latent ambiguity).

56 Grosse Pointe Park, 473 Mich at 198 (opinion by Cqvanagh, J.) (citations omitted).

 McCarty, 372 Mich at 575 (citation omitted). See also In re Kremlick Estate, 417 Mich 237; 331 NW2d 228 (1983), in which a will bequeathed half of an estate to the “Michigan Cancer Society,” which was an existing organization that could have received the money from the estate pursuant to the terms of the will. Thus, the language could have been applied without confusion. Nonetheless, this Court permitted extrinsic evidence to show that the grantor actually intended the beneficiary to be the “Michigan Division of the American Cancer Society” instead, explaining that a latent ambiguity can arise “ ‘where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates’ the possibility of more than one meaning.’ ” Id. at 240, quoting In re Butterfield Estate, 405 Mich 702, 711; 275 NW2d 262 (1979).

 Goodwin, Inc v Orson E Coe Pontiac, Inc, 392 Mich 195, 206; 220 NW2d 664 (1974).

 Id. at 206, 209-210.

 Hall v Equitable Life Assurance Society, 295 Mich 404, 411; 295 NW 204 (1940) (emphasis added; citation omitted).

 Id.

 In Meyer, the disputed language was given a meaning by the courts that was inconsistent with the plain meaning of the language itself because the seller in the contract at issue was designated as “Meyer Bros.” when, in fact, the extrinsic evidence indicated that “Herman C. Meyer” was the intended seller and that “Meyer Bros.” was no longer in existence.

 Id. at 424-425.

 The Third Restatement of Torts expressly addresses what it characterizes as the “frequently occurring problem” of “a plaintiff [who] enters into a release with a defendant that releases the defendant and provides that it also releases ‘all persons’. . ..” Restatement Torts, 3d, Apportionment of Liability, § 24, comment g, p 302. The reporter’s note to comment g states that some jurisdictions inquire “into the intent of the parties to the settlement agreement” and “[s]ome require a showing by the plaintiff that the ‘all persons’ language is ambiguous or constitutes a mistake . ...” Id. at 307.
*671 The Restatement adopts this “intent” approach, relying on Professor Corbin, and explains that “[clontract law permits inquiry into extrinsic evidence that might explain the negotiations of the parties, the circumstances in which the release was prepared, the respective goals of the parties in entering into the settlement and release . .. Id. In contrast, the Restatement rejects the approach adopted in Romska, noting that only a “distinct minority” of jurisdictions treat the “ ‘all persons’ language as unambiguous, which therefore cannot be challenged by extrinsic evidence of the parties’ intent.” Id. at 306.

 Grosse Pointe Park, 473 Mich at 198 (opinion by Cavanagh, J.).

 Hall, 295 Mich at 409 (citation omitted).

 Id. at 411 (citation omitted).

 W O Barnes Co, Inc v Folsinski, 337 Mich 370, 376-377; 60 NW2d 302 (1953).

 Id. at 377.

 Mich Chandelier Co v Morse, 297 Mich 41, 46; 297 NW 64 (1941).

 Meyer, 178 Mich at 424-425.

 The dissent, authored by Justice Markman, who also authored Romska in the Court of Appeals, is unpersuasive, despite its 32 pages in length, because the arguments are repetitive of Justice Markman’s analysis in Romska, which we have rejected today. The dissent claims that this decision is inconsistent with the law of this state. To support this claim, the dissent merely provides a string citation to Court of Appeals decisions decided after Romska. Given that these lower court decisions were bound by Romska, it is hardly remarkable that they utilized Romska’s legal analysis. The only other citations offered by the dissent in support of its claim are federal cases. In fact, it is the dissent’s limited formulation of the latent-ambiguity doctrine that is inconsistent with cases in which this Court has applied that doctrine. See, e.g., Keller v Paulos Land Co, 381 Mich 355, 362; 161 NW2d 569 (1968), in which this Court concluded that the parties intended that an easement for “ingress and egress” would be an easement for parking instead, even though this understanding “was not a use of ingress and egress within the common legal meaning.”

 This Court has held that when interpreting an ambiguity, it is significant if the relevant parties were aware of the circumstances. See, *675 e.g., Loyal Order of Moose v Faulhaber, 327 Mich 244, 250; 41 NW2d 535 (1950) (noting that when it is necessary for a court to construe an agreement, it must determine the intent of the parties and “[a]s bearing on the question of such intent at the time the contract was made, it was proper to show hy parol testimony the actual situation that then existed to the knowledge of defendant as well as plaintiff”).