*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FRANK KOVALIC AND VIRGINIA KOVALIC,

Plaintiffs-Appellants,

v

DEPARTMENT OF TREASURY,

Defendant-Appellee.

UNPUBLISHED
September 12, 2019

No. 345171
Tax Tribunal
LC No. 18-000107-TT

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Plaintiffs appeal as of right an opinion and judgment of the Michigan Tax Tribunal denying their request for a principal residence exemption (PRE) for tax years 2013 through 2016. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of plaintiffs' attempt to obtain a PRE for two parcels of property in Milford, Michigan. The first parcel, Parcel B, is a two-acre parcel of property. The second parcel is a 34-acre parcel of property. Plaintiffs co-own the 34-acre parcel with Finn Bergishagen and Mary Louise Bergishagen (the Bergishagens). Plaintiffs and the Bergishagens each own an undivided one-half interest in the 34-acre parcel. Plaintiffs' home is situated on Parcel B, which is adjacent to the 34-acre parcel.

### A. THE CONVEYANCE OF PARCEL B

On September 30, 1968, plaintiffs and the Bergishagens were granted a four-acre parcel, called Parcel AB. Parcel AB was conveyed to plaintiffs and the Bergishagens as partial fulfillment of a land contract that plaintiffs and the Bergishagens had previously entered into in Milford, Michigan. Parcel A and Parcel B were listed as separate properties with individual legal descriptions in the warranty deed conveying them. Several years later, on February 4, 1971, the Bergishagens conveyed their ownership of Parcel B to plaintiffs by quitclaim deed. The quitclaim deed was recorded, and Parcel B was assigned a parcel identification number. Parcel A, on the other hand, was never assigned a parcel identification number. On January 21,

1978, plaintiffs conveyed Parcel A to the Bergishagens by quitclaim deed. Plaintiffs intended to convey Parcel A to the Bergishagens and retain Parcel B. The Bergishagens did not record the January 21, 1978 quitclaim deed to Parcel A until August 29, 2011, when they conveyed the parcel to the Bergishagen Living Trust.

On that day, however, when the Bergishagens' attorney attempted to record the deed for Parcel A, a clerk at the Oakland County Register of Deeds observed that Parcel A did not have a parcel identification number and believed the measurements in the legal description of the property to be incorrect. The Bergishagens' attorney was instructed to change one of the measurements in the property description from 1676.23 feet to 1956.23 feet. The "1956.23 feet" measurement, however, was actually part of the legal description for Parcel B. Because Parcel B had an identification number and Parcel A did not, it would seem that the clerk confused the two. The clerk assigned the parcel identification number for Parcel B to the property the Bergishagens wished to convey—Parcel A—and recorded the warranty deed, which now also contained the legal description of Parcel B. Therefore, instead of recording a deed for Parcel A, the Bergishagens accidentally recorded a deed conveying Parcel B to the Bergishagen Living Trust.

## B. THE CONVEYANCE OF THE 34-ACRE PARCEL

On December 17, 1974, following complete satisfaction of their land contract, plaintiffs and the Bergishagens became the owners of a 54-acre parcel of property in Milford, Michigan. On an unknown date, the Bergishagens and plaintiffs conveyed 20 acres of the 54-acre parcel to an unnamed third party, leaving them with the 34-acre parcel that is a subject of this action. As previously mentioned, plaintiffs and the Bergishagens each own an undivided one-half interest in the 34-acre parcel. On July 18, 2011, the Bergishagens conveyed their interest in the 34-acre parcel to the Bergishagen Living Trust via warranty deed. The warranty deed conveying the 34-acre parcel to the Bergishagen Living Trust, however, did not indicate that plaintiffs held an undivided one-half interest in the 34-acre parcel. Thus, the Bergishagens inadvertently conveyed the entirety of the 34-acre parcel to the Bergishagen Living Trust.

## C. THE CORRECTIVE DEEDS AND PROCEEDINGS BEFORE THE TAX TRIBUNAL

After the defective deeds were recorded, plaintiffs attempted to claim a PRE for Parcel B and the 34-acre parcel for tax years 2013 through 2016. Plaintiffs' request for a PRE was denied, and plaintiffs were informed that they could not claim a PRE for Parcel B and the 34-acre parcel because they held no ownership interest in either property. Plaintiffs later discovered that the Bergishagens mistakenly conveyed the entirety of Parcel B and the 34-acre parcel to the Bergishagen Living Trust. In 2017, the Bergishagens attempted to remedy the issue by conveying Parcel B and an undivided one-half interest in the 34-acre parcel to plaintiffs.

Plaintiffs then appealed the denial of their claim for a PRE to defendant. Defendant reviewed plaintiffs' appeal and determined that plaintiffs were ineligible for the PRE because plaintiffs were not the legal owners of Parcel B and the 34-acre parcel during the 2013 through 2016 tax years. Plaintiffs appealed defendant's ruling to the Tax Tribunal, but the tribunal agreed with defendant and ruled that plaintiffs could not claim a PRE for Parcel B and the 34-acre parcel for the 2013 through 2016 tax years. The Tax Tribunal noted that the 2017 quitclaim deeds—which were filed to correct the errors created by the 2011 warranty deeds—could not be

used to render plaintiffs retroactively eligible to claim the PRE for tax years 2013 through 2016. This appeal followed.

## II. PRINCIPAL RESIDENCE EXEMPTION

Plaintiffs argue that the Tax Tribunal erred by denying their request for a PRE because a patent ambiguity existed in the warranty deed that conveyed Parcel B to the Bergishagen Living Trust, and a latent ambiguity existed in the warranty deed that conveyed the 34-acre parcel to the Bergishagen Living Trust. Plaintiffs further contend that the 2017 quitclaim deeds conveying Parcel B and an undivided one-half interest in the 34-acre parcel to plaintiffs render plaintiffs retroactively eligible to claim the PRE for the 2013 through 2016 tax years. We disagree.

In general, "[t]he standard of review of Tax Tribunal cases is multifaceted." *Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 75; 780 NW2d 753 (2010). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 586; 854 NW2d 172 (2014). An "error of law" occurs where "the Tax Tribunal's decision is not supported by competent, material, and substantial evidence on the whole record." *Id*. Stated another way, "[t]he Tax Tribunal's factual findings are final if they are supported by competent, material, and substantial evidence on the whole record." *Id*. (quotation marks and citation omitted). If no factual dispute exists and no fraud is alleged, "appellate review is limited to whether the Tax Tribunal made an error of law or adopted a wrong legal principle." *Id*. at 587. This Court reviews issues of statutory construction de novo. *Id*. Additionally, this issue involves the proper interpretation of a deed, which is viewed by this Court as a form of contract. *Penrose v McCullough*, 308 Mich App 145, 147; 862 NW2d 674 (2014). "[B]ecause deeds are contracts, the interpretation of their language is an issue of law, which this Court reviews de novo." *Id*.

Under MCL 211.7cc(1), which governs PREs, a taxpayer may claim a property tax exemption for his or her principal residence to avoid the payment of "tax[es] levied by a local school district for school operating purposes . . . ." MCL 211.7dd(c) defines a "principal residence" as "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established." To claim the PRE, the taxpayer is required to establish, by affidavit, that he or she owns and occupies the property subject to the PRE. MCL 211.7cc(2).

### A. PATENT AMBIGUITIES WITH RESPECT TO PARCEL B

Plaintiffs contend that the Tax Tribunal erred requiring reversal by failing to note that the August 29, 2011 warranty deed contained a patent ambiguity because the description refers to Parcel A—not Parcel B—and because the Bergishagens only intended to convey Parcel A to the Bergishagen Living Trust. "[A] patent ambiguity appears from the face of [a] document." *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). In arguing that the warranty deed contained a patent ambiguity, however, plaintiffs rely on extrinsic evidence of the parties' intent. "[E]xtrinsic evidence may *not* be used to identify a patent ambiguity . . . ." *Id*. (emphasis added).

Thus, in order for plaintiffs to prevail with regard to Parcel B, a patent ambiguity must have existed on the face of the August 29, 2011 warranty deed.

"A contract is patently ambiguous only if, after the court has engaged in its judicial duties of giving effect to the contract's language, the court concludes that a term 'is *equally* susceptible to more than a single meaning,' or that 'two provisions of the same contract irreconcilably conflict with each other . . . .' " *Shay*, 487 Mich at 678 (citations omitted). On its face, the August 29, 2011 warranty deed that purported to convey Parcel A included a legal description that, *without* consideration of extrinsic evidence or knowledge of the earlier referenced circumstances concerning the conveyance, belonged to Parcel B. Whether this was the result of a mistake by the Oakland County Register of Deeds and the Bergishagens' attorney is a question that would require extrinsic evidence to examine, and as previously noted, extrinsic evidence is not admissible to show a patent ambiguity. *Id*. at 667. Thus, the August 29, 2011 warranty deed, which conveyed Parcel B instead of Parcel A, was not *patently* ambiguous on its face.

## B. LATENT AMBIGUITIES WITH RESPECT TO THE 34-ACRE PARCEL

Plaintiffs next contend that a latent ambiguity existed with regard to the warranty deed conveying the 34-acre parcel to the Bergishagen Living Trust, and that extrinsic evidence should have been admitted to prove that plaintiffs never intended to convey their undivided one-half interest in the 34-acre parcel. A latent ambiguity "arises not upon the words of the will, deed, or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe." *Shay*, 487 Mich at 668-678 (quotation marks and citation omitted). " '[T]he detection of a latent ambiguity requires a consideration of factors outside the instrument itself . . . .' " *Id*. at 668 (citation omitted). In support of the argument that a latent ambiguity existed in the language of the deed, plaintiffs presented evidence that they owned an undivided one-half interest in the 34-acre parcel, and the Bergishagens' attorney attested that the warranty deed "should have described and conveyed only the undivided one-half interest which was owned by Finn Bergishagen and Mary Louise Bergishagen, his wife." Indeed, the evidence suggests that the July 18, 2011 warranty deed contained a mistake, but this is not the same as a latent ambiguity.

As the Michigan Supreme Court stated in *Mich Chandelier Co v Morse*, 297 Mich 41, 48; 297 NW 64 (1941), "[a]n omission or mistake is not an ambiguity." Put differently, a latent ambiguity exists if the language in a deed could have multiple meanings, but the various interpretations of the deed's language are only discernable through extrinsic evidence. See *Shay*, 487 Mich at 668 (stating that a latent ambiguity exists when the language of a contract or deed is clear, but facts outside the contract create the "necessity for interpretation or a choice among two or more possible meanings."). The language of the August 29, 2011 warranty deed explicitly stated that the Bergishagens were conveying the entirety of the 34-acre parcel to the Bergishagen Living Trust, and there is no other plausible interpretation of the deed. There was no ambiguity.

Extrinsic evidence admitted "under the guise of a claimed latent ambiguity is not permissible to vary, add to or contradict the plainly expressed terms of a writing or to substitute a different contract for it to show an intention or purpose not therein expressed." *Mich Chandelier Co*, 297 Mich at 48. Indeed, as a general rule, "a court must never cross the point at which the written contract is *altered* under the guise of contract *interpretation*." *Grosse Pointe Park v*

-4-

*Mich Muni Liability and Prop Pool*, 473 Mich 188, 218; 702 NW2d 106 (2005). A mistake and a latent ambiguity are not the same, and no latent ambiguity was presented in the language of the warranty deed conveying the 34-acre parcel to the Bergishagen Living Trust. *Mich Chandelier Co*, 297 Mich at 48.

## C. JURISDICTION OF THE TAX TRIBUNAL

As an aside, we note that, by framing the issue as one that concerned the existence of patent and latent ambiguities in the warranty deeds that conveyed the properties at issue herein, plaintiffs necessarily asked the Tax Tribunal to make findings and conclusions regarding the proper legal interpretation of a deed, which is a form of contract. *Penrose*, 308 Mich App at 147. As a general rule, "contract claims are not within the exclusive and original jurisdiction of the Tax Tribunal . . . ." *Highland-Howell Dev Co, LLC v Marion Twp*, 469 Mich 673, 678; 677 NW2d 810 (2004). MCL 205.731, which describes the exclusive and original jurisdiction of the Tax Tribunal, provides that the Tax Tribunal holds exclusive and original jurisdiction over "proceeding[s] for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization" under Michigan's property tax laws. MCL 205.731(a). Indeed, this Court has stated:

> While the Tax Tribunal's membership is particularly competent to resolve disputes related to the basis for and amounts of taxes, its membership is not qualified to resolve common-law tort or contract claims. Clearly . . . the Legislature did not intend the Tax Tribunal's exclusive jurisdiction to encompass matters outside the realm of those tax matters specified in the statute. [*Petersen Fin, LLC v Kentwood*, 326 Mich App 433, 449-450; 928 NW2d 245 (2018), quoting *Highland-Howell Dev Co, LLC*, 469 Mich at 677-678.]

A determination of whether the 2011 warranty deeds contained ambiguities was not a question of tax law, and was not within the Tax Tribunal's jurisdiction to address. The Tax Tribunal could only concern itself with the question of whether plaintiffs met the requirements of MCL 211.7cc(1). Any underlying reason for plaintiffs' lack of ownership in the properties was outside of the Tax Tribunal's purview because jurisdiction over questions regarding title, interest, and possession of property rests with the circuit courts. MCL 600.2932(1).

In light of the Tax Tribunal's ultimate lack of jurisdiction to address questions of contractual interpretation, the Tax Tribunal's strict interpretation of MCL 211.7cc(1) clearly renders plaintiffs ineligible to receive the PRE. Even if it was never intended that the properties be conveyed to the Bergishagen Living Trust, the pertinent consideration for the Tax Tribunal's purposes was that plaintiffs did not own Parcel B or the 34-acre parcel during the 2013 through 2016 tax years, which is a requirement for claiming the PRE under MCL 211.7cc(1). Plaintiffs failed to show that they owned Parcel B or had an ownership interest in the 34-acre parcel during the 2013 through 2016 tax years. Accordingly, the Tax Tribunal did not err in denying plaintiffs' request for a PRE.

## D. RETROACTIVE EFFECT OF THE 2017 DEEDS

Plaintiffs lastly contend that the Tax Tribunal should have recognized the 2017 quitclaim deeds, which were recorded to remedy the errors with regard to plaintiffs' title and ownership of the properties, as corrective deeds. Plaintiffs contend that the Tax Tribunal should use these corrective deeds to retroactively grant their request for a PRE for the 2013 through 2016 tax years. In support of their argument, plaintiffs direct this Court to *Diehlman v Dwelling-House Ins Co*, 78 Mich 141; 43 NW 1045 (1889). In *Diehlman*, the Michigan Supreme Court allowed a deed that corrected a faulty legal description of a property to have retroactive effect with regard to an insurance policy held by the plaintiff. *Id*. at 142-143. The Tax Tribunal correctly concluded that plaintiffs' case is distinguishable from *Diehlman*.

The plaintiff in *Diehlman* was only permitted to utilize a corrective deed for the limited purpose of changing the legal description of a parcel of property, not to change how the property was held or convey it to a grantee. *Id*. Conversely, in plaintiffs' case, the 2017 quitclaim deeds were executed to convey properties to plaintiffs after they were erroneously conveyed to the Bergishagen Living Trust. The Tax Tribunal observed that allowing plaintiffs to claim the 2017 quitclaim deeds as "corrective deeds," as the plaintiff did in *Diehlman*, would contradict Michigan Land Title Standard 3.3, which states:

> A grantor who has conveyed real property by an effective, unambiguous instrument cannot, by executing a subsequent instrument, make a substantial change in the name of the grantee, decrease the area of the real property or the extent of the estate granted, impose a condition or limitation upon the interest granted, or otherwise derogate from the first conveyance, even though the subsequent instrument purports to correct or modify the former.

Although the July 18, 2011 and August 28, 2011 warranty deeds led to the mistaken conveyance of Parcel B and the 34-acre parcel to the Bergishagen Living Trust, as explained above, the language of the deeds was not patently or latently ambiguous. Michigan Land Title Standard 3.3, although not binding on this Court, only allows for the use of a corrective deed if the original deed contained an ambiguity. Further, the *Diehlman* case concerned a circuit court's determination regarding the applicability of an insurance policy. Plaintiffs have cited no published authority wherein the Tax Tribunal permitted a party to use a corrective deed as a means of qualifying for a tax exemption. Overall, the Tax Tribunal did not err by denying plaintiffs' request for a PRE.

Affirmed.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood