*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICK J. MAUCH and LAURA S. MAUCH,

UNPUBLISHED
December 17, 2020

Plaintiffs-Appellants,

v

No. 349443
Charlevoix Circuit Court
LC No. 16-083025-CK

MICHAEL LAMBERT, PATRICIA LAMBERT,
FRANCIS E. JANOSZ II, JULIANA JANOSZ, and
HARBORSIDE CONDOMINIUM OWNERS
ASSOCIATION,

Defendants-Appellees.

Before: RONAYNE KRAUSE, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Plaintiffs, Patrick and Laura Mauch, appeal as of right the trial court's order partially granting and partially denying plaintiffs' motion to enforce the mediation-settlement agreement. Defendants are Michael Lambert, Patricia Lambert, Francis Janosz II, Juliana Janosz, and the Harborside Condominium Owners Association. This matter arises out of a dispute between condominium neighbors: the Lamberts live above plaintiffs, and the parties agreed to the installation of carpet in the Lamberts' unit to reduce noise caused by walking on the Lamberts' hardwood floor. Plaintiffs argue that the trial court erred when it found that the Lamberts' placement of carpet on nonslip padding over their hardwood floor was sufficient to meet the requirement contained in the mediation-settlement agreement that the carpet be "attached." We affirm.

## I. BACKGROUND

The Lamberts own Unit 201 in the Harborside Condominium, and in 2013, they replaced their unit's existing carpeted floors with hardwood flooring, allegedly in contravention of the bylaws of the Harborside Condominium Owners Association. In 2015, plaintiffs acquired Unit 101, and upon taking possession, they found intolerable the noise emanating from Unit 201 due to walking on the hardwood floors. Plaintiffs commenced suit, but the parties eventually reached a settlement agreement during mediation. In relevant part, the agreement specified that the Lamberts

-1-

were "to add attached carpet with padding to" certain areas of Unit 201. The agreement was contingent on plaintiff's approval of the carpet and padding to be used, and also provided for the use of an existing area rug in the living room. After several rounds of negotiation and litigation regarding various other issues, plaintiffs approved a carpet and pad presented to them by the Lamberts.

However, plaintiffs subsequently discovered that the carpet and pad to which the parties had agreed would not be affixed to the floor using staples, adhesive, or any similar way of securing it to the floor. Plaintiffs moved to enforce the parties' agreement, contending that the Lamberts' installation method was in violation of the requirement that the carpet be "attached." Plaintiffs emphasized that "this whole case" is about eliminating noise from the upstairs unit. They argued that without a more permanent method of affixing the carpet, the Lamberts or subsequent owners could easily remove it. Thus, plaintiffs would have difficulty proving that the Lamberts were remaining compliant with the agreement and would have to return to court.

The trial court held an evidentiary hearing. A carpet salesperson explained that carpets were stretched and affixed at the walls if installed to cover a room; but when installed as a rug, carpets were freestanding and used certain kinds of pads to protect the floor while making the rug stick to the floor. He also explained that attempting to affix rugs to the floor would inevitably cause them to roll up and gap, and his company would not "do that because there's issues with it." Nevertheless, he conceded that it was not technically impossible. However, the weight of the carpet, especially with furniture on top, would keep it from moving with a rubber pad underneath. He explained that although one might be able to roll up and move a runner, the large room-size rugs used in the Lamberts' unit would require at least two people to move. Furthermore, nothing would prevent someone from pulling up tacked-down carpet and removing it, either. In rebuttal, an inspector for high-end wood flooring installations, testified that rugs could be permanently affixed to the floor using a "z-bar" that would stretch and stabilize the carpet, or stapling it down at the edges through a "roll and tuck." However, he agreed that such an installation would be challenging, would not be necessary on a large area rug rather than a runner, and would entail punching holes into the wood underneath.

The trial court held that the method of attachment that the Lamberts used for the area rug—laying the carpet over sound-absorbing, nonslip padding—was sufficient to comply with the provisions of the mediation-settlement agreement and a related restrictive covenant.[1] The trial court noted that the parties had agreed to the particular products, and opined that using the z-bar or tacks would be putting a "square peg into a round hole." It further pointed out that even tacking the carpet down was not permanent, and would at most slow down its removal. The trial court found that installation using a rubber pad met the "attached" requirement and was sufficient to satisfy the parties' intent. Although several other matters were litigated below, they are not raised as issues on appeal, so we will not discuss them.

---

[1] The terms of the mediation-settlement agreement required the Lamberts to record a restrictive covenant. The restrictive covenant did not contain the "attached" requirement.

## II. STANDARD OF REVIEW

We review de novo as a question of law the interpretation of a contract. *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 172; 848 NW2d 95 (2014). A mediation-settlement agreement is a contract, binding the parties "absent a showing of mistake, fraud, or unconscionable advantage." *Plamondon v Plamondon*, 230 Mich App 54, 56; 583 NW2d 245 (1998). "A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005) (emphasis omitted). "Our goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (quotation omitted). Extrinsic evidence may, however, be considered to show that there is a latent ambiguity in the contract, meaning seemingly-clear language turns out to have multiple possible meanings when the contract is applied or executed. *Shay v Aldrich*, 487 Mich 648, 667-672; 790 NW2d 629 (2010). Where a latent ambiguity exists, the parties' intent must be effectuated in light of the parties' purposes, and in light of the facts and circumstances surrounding execution of the contract. *Id*. at 671-673.

## III. ANALYSIS

As an initial matter, there appears to be no dispute as to the purposes and goals the parties sought to achieve in agreeing to the relevant portion of their agreement: ultimately, plaintiffs wished to abate the noise coming from the unit above them as permanently and reliably as possible. This is consistent with the specific clause at issue in the settlement agreement: "Defendants Lambert to add attached carpet with padding to the areas of their unit as indicated in the attached[2] hand drawn, not to scale diagram marked as Exhibit 1, to reduce noise." The word "attached" is the past-tense form of "attach," which means, in relevant part, to fasten, join, or connect.[3] The agreement explicitly provided for area rugs, and the included hand-drawn exhibit appeared to also contemplate runners in the hallway.

The evidence at the hearing revealed that area rugs were typically not mechanically anchored to the floor underneath, doing so would minimally be challenging, and doing so was, in any event, unnecessary because they could not easily be moved intentionally or unintentionally. There was no dispute that runners *could* be mechanically anchored. However, the carpet salesperson explained that his business had been in operation since the 1800's, and its experience was that mechanically anchoring runners to wood floors had poor results. Finally, although runners might be possible to roll up, area rugs were much more difficult to remove or maneuver; meanwhile, rubber padding effectively kept all such rugs from moving. The trial court further observed that someone could simply pull up a carpet with minimal additional effort even if it had been tacked down. Although this was not part of the testimonial evidence, we do not think it is outside common experience, especially of "DIY" homeowners. Almost any homeowner would

---

[2] Interestingly, the word "attached" thus occurs twice in the same sentence.

[3] The Cambridge Dictionary, < https://dictionary.cambridge.org/us/dictionary/english/attach >.

also know that carpet can sustain damage that might require replacement, so it would not be appropriate to install totally unremovable carpet in a residence.

The agreement does not specify any particular manner of "attachment," nor does it state that it must be so permanent that the carpet cannot be removed for any reason whatsoever. It is also clear that, at least regarding the area rugs, mechanical anchoring is not appropriate and might not meaningfully increase the difficulty of its removal. Furthermore, the evidence indicated that a rubber pad would cause carpet to "stick" to the floor, rendering it immobile in at least two dimensions. We conclude that even though the word "attached" seems clear, it is manifestly apparent that as applied, there is some latent ambiguity. That being the case, we agree with the trial court's assessment that the use of rubber padding as an "attachment" does fasten, join, or connect the carpets in at least two dimensions, which under the circumstances is consistent with the use of the word in the agreement, the goals the agreement was intended to serve, and the evidence introduced at the evidentiary hearing.

We also reject plaintiff's argument that the trial court erred by concluding that plaintiffs waived the attachment requirement. "A waiver is an intentional relinquishment or abandonment of a known right." *Nexteer Auto Corp v Mando Am Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016). The trial court never held that any waiver occurred. Rather, it merely held that the carpeting as installed was consistent with the parties' agreement. We agree.

Affirmed. Defendants, being the prevailing parties, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Stephen L. Borrello