HALL *v.* EQUITABLE LIFE ASSURANCE SOCIETY OF
THE UNITED STATES.

1. INSURANCE—APPLICATION AND POLICY CONSTITUTE THE CONTRACT.
   The application for a life insurance policy and the policy issued
   thereunder construed together constitute the insurance contract
   (3 Comp. Laws 1929, § 12427).

2. SAME—CONSTRUCTION OF CONTRACTS.
   The rules for the construction of an insurance contract are the
   same as for any other written contract.

3. CONTRACTS—CONSTRUCTION ACCORDING TO COMMON MEANING.
   It is a general rule that where the words of any written instru-
   ment are free from ambiguity in themselves, and where ex-
   ternal circumstances do not create any doubt or difficulty as
   to the proper application of those words to claimants under
   the instrument, or the subject matter to which the instrument
   relates, such instrument is always to be construed according
   to the strict, plain, common meaning of the words themselves.

4. WORDS AND PHRASES—PATENT AND LATENT AMBIGUITIES.
   A patent ambiguity is one apparent upon the face of the instru-
   ment, arising by reason of inconsistency, obscurity or an
   inherent uncertainty of the language adopted, such that
   the effect of the words in the connection used is either to
   convey no definite meaning or a double one, whereas a latent
   ambiguity is one arising not upon the words of the instru-
   ment, as looked at in themselves, but upon those words
   when applied to the object or to the subject which they
   describe.

5. INSURANCE—LATENT AMBIGUITY IN DESIGNATION OF BENEFICIARY
   —PAROL EVIDENCE.
   In suit to determine right to proceeds of life insurance con-
   tract on 21-year-old insured who had designated widow of his
   former guardian, a defendant, as beneficiary with term
   "(guardian)" following her name, parol evidence was ad-
   missible to explain the meaning of the term used and to
   show insured's actual intention as to whether the beneficiary
   was to take as an individual or in a fiduciary capacity.

---

Use of extrinsic evidence to interpret written contracts, see 1 Re-
statement, Contracts, §§ 230, 231.

6. SAME—AMBIGUOUS DESIGNATION OF BENEFICIARY.

Party named as beneficiary in life insurance contract of
21-year-old insured, who was the widow of insured's former
guardian and whose name was followed by the term "(guard-
ian)," took proceeds of the policy in a fiduciary capacity
where evidence showed that beneficiary was not insured's
guardian, that insured was under neither a legal nor a
moral obligation to name her as his beneficiary, insured had
no discussion with her relative thereto, and insurance agent's
testimony indicates that such designation was temporary and
to remain only until insured could make up his mind whom
he would name as beneficiary.

Appeal from Saginaw; O'Neill (James E.), J. Submitted October 15, 1940. (Docket No. 73, Calendar No. 41,150.) Decided December 10, 1940. Rehearing denied February 7, 1941.

Bill by William H. Hall, administrator of the estate of Billy Charles Will, deceased, against Equitable Life Assurance Society of the United States, Harold Slaght, and Emma H. Foote to recover the proceeds of an insurance policy on the life of the deceased. Cross bill by defendant Foote against plaintiff and other defendants. Cross bill of interpleader by defendant corporation against plaintiff and other defendants. Decree for plaintiff. Defendant and cross-plaintiff Foote appeals. Affirmed.

*Floyd A. Wilson* and *DeVere Kostoff,* for appellant.

*Heilman & Purcell,* for plaintiff.

*Brownell & Gault* (*Morris Zwerdling,* of counsel), for defendant corporation.

SHARPE, J. This is an action to determine the right to proceeds of a life insurance policy issued by the Equitable Life Assurance Society of the United States on the life of Billy Charles Will.

The principal facts are not in dispute. When Billy Charles Will was 18 years of age his father died leaving him an estate of approximately $4,000. After consulting with relatives, he decided upon having William H. Foote as his guardian and, accordingly, Mr. Foote was so appointed by the probate court. Billy Charles Will made his home with Mr. and Mrs. Foote and also continued friendly relations with members of his own family. Mr. Foote died in May, 1936, and Emma H. Foote, as executrix of her husband's estate, settled the guardianship account with Billy Charles Will the day following his 21st birthday, namely, July 9, 1936.

On July 15, 1936, Billy Charles Will made application for an insurance policy and "Emma H. Foote (guardian)" was named beneficiary therein. The policy was issued about July 28, 1936, in which the beneficiary is designated "Emma H. Foote." The assured died December 30, 1936.

William H. Hall, administrator of the estate of Billy Charles Will, filed a bill of complaint against the insurance company and Emma H. Foote asking that the policy be reformed and corrected to read "Emma H. Foote (guardian);" and that the court find that it was the intention of deceased that Emma H. Foote should take the proceeds of the policy in a fiduciary capacity in the nature of a trust for the benefit of decedent's estate. The insurance company filed its answer and a bill of interpleader, paid the proceeds of the policy into court and was discharged.

The cause came on for trial and the trial court made the following finding of facts:

"Although the application named Emma H. Foote (guardian) beneficiary, the policy itself does not show Emma H. Foote (guardian) beneficiary. The policy shows Emma H. Foote beneficiary; the des-

ignation (guardian), being omitted. Inasmuch as the policy does not conform to the application made by the insured and because the policy with the application constitute the entire contract according to the terms of the policy itself * * * and according to 3 Comp. Laws 1929, §§ 12425, 12427 and 12435 (Stat. Ann. §§ 24.261, 24.263 and 24.271), it follows the policy must be considered to read Emma H. Foote (guardian) beneficiary.

"It is conceded that Emma H. Foote was never appointed guardian of Billy C. Will, although for some time before his death her husband was the duly appointed guardian of his (Billy C. Will's) estate. Under these circumstances it is competent for an inquiry to be made to determine what Billy C. Will intended when he named Emma H. Foote (guardian) beneficiary. This court is of the opinion that the testimony on this question shows that Billy C. Will did not intend to deprive his estate of the benefit of his insurance and intended Emma H. Foote to take this benefit for his estate. This conclusion seems inescapable for otherwise the word (guardian) should never have been used by him."

Emma H. Foote appeals and contends that decedent's intent is to be determined by the court as a matter of law from an examination of the insurance contract without the aid of oral testimony; that the language of the application relative to the beneficiary is clear and unambiguous; and that the word "guardian" as used in the application is *descriptio personae* to identify the beneficiary and decedent intended by the application to name Emma H. Foote individually as beneficiary.

The administrator of the estate contends that Emma H. Foote never having been appointed guardian of Billy Charles Will, a latent ambiguity exists; and that under such conditions the court must resort to parol evidence to determine the capacity in which

the beneficiary would take the proceeds, if any, and that it was the intent of the assured that the named beneficiary should take in the nature of a passive trust.

In the case at bar, it is difficult to discover from a reading of the contract whether decedent used the word "guardian" as descriptive of a person or in some other sense, *i.e.*, whether he intended Emma H. Foote the individual, Emma H. Foote (guardian) or Emma H. Foote as guardian to be beneficiary of this fund.

In determining this matter we have in mind that the application for the insurance policy and the policy issued thereunder construed together constitute the insurance contract (3 Comp. Laws 1929, § 12427; *Hawthorne* v. *Metropolitan Life Insurance Co.*, 285 Mich. 329); and that the rules for the construction of an insurance contract are the same as for any other written contract (*Bowen* v. *Prudential Insurance Co. of America*, 178 Mich. 63 [51 L. R. A. (N. S.) 587]).

In 10 R. C. L. p. 1070, § 265, it is said:

"It is a general rule that where the words of any written instrument are free from ambiguity in themselves, and where external circumstances do not create any doubt or difficulty as to the proper application of those words to claimants under the instrument, or the subject matter to which the instrument relates, such instrument is always to be construed according to the strict, plain, common meaning of the words themselves."

It is a well-settled rule that extrinsic evidence is admissible to show that a latent ambiguity exists. *Township of Zilwaukee* v. *Railway Co.*, 213 Mich. 61. In this case the court defined a latent ambiguity as follows (p. 69):

"A patent ambiguity is one apparent upon the face of the instrument, arising by reason of inconsistency, obscurity or an inherent uncertainty of the language adopted, such that the effect of the words in the connection used is either to convey no definite meaning or a double one. As opposed to a patent ambiguity, a latent ambiguity is defined as one—'which arises not upon the words of the will, deed or other instrument, as looked at in themselves, but upon those words when applied to the object or to the subject which they describe.' Black's Law Dictionary."

In 20 Am. Jur. pp. 1010, 1011, §§ 1157, 1158, it is said:

"An ambiguity is properly latent, in the sense of the law, when the equivocality of expression, or obscurity of intention, does not arise from the words themselves, but from the ambiguous or obscure state of extrinsic circumstances to which the words of the instrument refer, and which is susceptible of explanation by a mere development of extraneous facts without altering or adding to the written language or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words made use of. * * *

"The view has been taken that there is an intermediate class of ambiguities partaking of the nature of both patent and latent ambiguities. According to Story, J., this intermediate class exists when the words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject matter in the contemplation of the parties."

In *Crosby* v. *Ball* (1902), 4 Ont. L. Rep. 496, 500, it was said:

"The fact that the policy is made payable by the deceased to Mary Crosby, his wife, coupled with the other fact that his wife's name was Harriet Teresa Crosby, raises a latent ambiguity, and allows the admission of parol evidence to explain the meaning of the writing."

In *Meyer* v. *Shapton,* 178 Mich. 417, 425, the court said:

"It is a general rule that parol evidence may be admitted to correct, identify, or explain the name given and party intended in a writing, as grantee, devisee, or promisee, not to pervert the written instrument, but to prevent the written instrument being perverted from the true intent of the contracting parties. *Cleveland* v. *Burnham,* 64 Wis. 347 (25 N. W. 407); 17 Cyc. p. 712, and cases there cited. Even under this rule the parol evidence was admissible."

In this case the insurance contract made payable to Emma H. Foote (guardian) coupled with the fact that she never was such raises a latent ambiguity and permits the admission of parol evidence to explain the meaning of the language used.

The rule is broadly stated in 8 Couch, Cyclopedia of Insurance Law, pp. 7060, 7066, §§ 2183, 2186:

"Where the policy is not clear as to who was intended as beneficiary, parol evidence is admissible to show the actual intention.   *   *   *

"Where either the general language or particular words or phrases used in a contract of insurance are ambiguous, that is, doubtful as to meaning, or, in the light of other facts, reasonably capable of having more than one meaning so that the one applicable to the contract in question cannot be ascertained without outside aid, extrinsic evidence may be introduced to explain such ambiguity, it being generally conceded that parol evidence is admissible to clear an ambiguity; in other words, that,

where the language used is of doubtful meaning, it is proper to resort to extrinsic evidence to ascertain the true meaning intended by the parties.    *    *    *

"And where, from the evidence which is introduced, there arises a doubt as to what party or parties are to receive the benefit of the policy, parol evidence is admissible to determine such fact."

By virtue of the above authority plaintiff has the right to show whether decedent intended Emma H. Foote to take as an individual or in a fiduciary capacity. The trial court held that, "Billy C. Will did not intend to deprive his estate of the benefit of his insurance and intended Emma H. Foote to take this benefit for his estate."

From our examination of the record it is apparent that the deceased was under no legal or moral obligation to name Mrs. Foote as his beneficiary, nor was there any discussion between deceased and Mrs. Foote that she would be named beneficiary in the policy; that when he was solicited by Mr. Vogt, the insurance agent, deceased was undetermined as to who would be named as his beneficiary; and that he finally told the agent to put down Emma H. Foote as his guardian for the time being. It is our opinion that deceased was undecided at the time he made application for insurance and only intended to name Mrs. Foote in a capacity as guardian until such time as he could determine whom he would name beneficiary. Under such circumstances Mrs. Foote would not take individually, but in the capacity of a guardian or one who would have the care and management of deceased's estate.

The record sustains the finding of the trial court and the decree is affirmed, with costs to plaintiff.

BUSHNELL, C. J., and BOYLES, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.