# STATE OF MICHIGAN

# COURT OF APPEALS

LISA A. COZZA,

       Plaintiff-Appellee,

v

ANTHONY F. COZZA,

       Defendant-Appellant.

UNPUBLISHED
December 29, 2016

Nos. 328813, 328914
St. Clair Circuit Court
LC No. 09-000969-DM

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and GLEICHER, JJ.

PER CURIAM.

In this divorce judgment enforcement matter, defendant appeals, partially by leave granted and partially by right, the portion of the trial court's order requiring defendant to pay an arrearage in the amount of $37,440.00 and attorney fees in the amount of $795.[1] We vacate the order in part[2] and remand for further proceedings.

The parties were married in 1995 and had two children, one of whom is not presently at issue. Their daughter, born in 2002, is severely physically and cognitively disabled, requiring 24-hour care. The parties were divorced in 2010. Their judgment of divorce (JOD) awarded the parties joint legal custody of the children, and it awarded plaintiff primary physical custody. Defendant was awarded weekly parenting time with both children. Defendant exercised that parenting time with the parties' son; however, defendant exercised significantly less parenting time with the daughter than anticipated. The gravamen of the instant appeal is plaintiff's contention, which the trial court accepted, that defendant's failure to exercise parenting time with

---

[1] Defendant filed a claim of appeal from the award of attorney fees in Docket No. 328813. Defendant filed an application for leave to appeal from the arrearage award in Docket No. 328914. This Court ordered that the two appeals be consolidated. Order of the Court of Appeals, Docket No. 328914, 10/5/2015.

[2] The trial court also referred the parties to the Friend of the Court to recalculate child support and permitted plaintiff to move her residence anywhere within 100 miles instead of the 10 miles to which she had previously been restricted. These portions of the order are not before us and we do not disturb them.

the daughter places additional burdens on plaintiff, and the JOD requires defendant to compensate her for those additional burdens.

Specifically, the JOD provided, in relevant part, that the parties' daughter would reside with defendant:

> On one of his days off from work each week from 8:00 a.m., or after school, overnight until she goes to school the next day, or until 8:00 a.m. when he returns her to Plaintiff. From 5:00 p.m. to 8:00 p.m. on his second day back to work each week.

The parties were also to never leave the daughter unsupervised without a properly qualified adult.

The JOD made separate provisions for "child support" and for "childcare expenses." For "child support," the JOD specified a specific monthly sum of money defendant was to pay plaintiff for the support of both children, and a different sum for only one child. For "childcare expenses," defendant:

> shall pay Plaintiff directly, 75% of any necessary, unreimbursed, childcare expenses of Plaintiff so that she can work, and in addition, for a minimum of five hours and a maximum of 18 hours each week Defendant fails to take [their daughter].

The parties also agreed to an "attachment" to the JOD. In relevant part, the attachment included a provision similar but *not* identical to that above, providing that defendant:

> shall pay Plaintiff, directly, 75% of any necessary, unreimbursed, childcare expenses of Plaintiff so that she can work, at the rate of $8.00 per hour, not to exceed six hours per day, each week Defendant fails to take [their daughter].

The interplay between these two provisions is the most significant question in the instant appeal.

Approximately five years after the divorce was entered, defendant filed a motion seeking to enforce an unrelated provision in the JOD requiring plaintiff to provide him with statements from certain accounts.[3] Plaintiff filed her own motion arguing that the JOD and the attachment thereto provided that defendant was to pay her for child care expenses at a rate of $8 an hour for each week defendant did not take their daughter. She stated that since the divorce, defendant had only taken their daughter overnight twice, burdening plaintiff with all of the daughter's special needs care and precluding her from being able to work enough to support herself. She asserted that the unreimbursed, forfeited overnight parenting time totaled well over 18 hours a week,

---

[3] This motion is not at issue in this appeal. Although defendant expounds a great deal of concern about this issue, he pursues no coherent argument and requests no relief regarding this issue. Consequently, any complaint he might have on this issue is abandoned.

entitling her to $37,440 over five years. Plaintiff also requested attorney fees for needing to bring the motion.

Defendant's argument was that the reimbursement provision had been intended to apply only if plaintiff was actually working, in which case she was required to provide proof thereof. However, he conceded, though counsel, that he had not exercised any of his overnight parenting time with the daughter. The trial court agreed with plaintiff's interpretation of the JOD specifying that defendant was to reimburse plaintiff whenever he failed to take their daughter *in addition to* partially reimbursing necessary childcare expenses so that plaintiff could work. It concluded that the JOD was a contract, and defendant had violated the reimbursement provision, so it ordered defendant's outstanding obligation thereunder to be considered an arrearage on his child support obligation.

As an initial matter, we appreciate plaintiff's concerns that defendant failed to preserve the entirety of the issues he raises on appeal. Plaintiff correctly points out that defendant never requested an evidentiary hearing and did not object to the dollar amount of the trial court's award. However, "no exception need be taken to a finding or decision" by the trial court. MCR 2.517(7). Furthermore, this Court generally will not consider an argument unpreserved merely because it is more sophisticated or fully-developed on appeal than it was in the trial court; we furthermore may overlook the preservation requirements entirely to avoid manifest injustice, to fully and properly determine the appeal, or if the issue is legal and the record contains all evidence necessary for its resolution. *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). We choose to consider all of defendant's properly presented arguments.

Consent judgments of divorce are contracts and, as such, their interpretation and application are matters of law that we review de novo. *Holmes v Holmes*, 281 Mich App 575, 587; 760 NW2d 300 (2008). However, de novo review is only proper to the extent such judgments are unambiguous; any ambiguities in a contract generally must be resolved by the trier of fact. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003). Whether a contract is ambiguous is itself a question of law. *Id*., at 463. We also review de novo any construction of statutes and the application of the law to facts, but child support orders themselves and any modifications of them are reviewed for an abuse of discretion. *Holmes*, 281 Mich App at 586-587. We have been unable to find in the record any explicit statement clarifying whether the JOD at issue *is* a consent judgment, but the parties and the trial court all seemingly treated it as such. Therefore, so do we.

We are unable to entirely accept either party's interpretation of the JOD with the inclusion of the attachment. The attachment did not purport to revoke the relevant provision in the JOD, but it did more than merely provide an additional term. We find that the partial overlap and partial discrepancy between the two documents necessarily renders both, in relevant part, ambiguous.

The language "so that she can work" is, contrary to defendant' arguments, clearly intended to be explanatory rather than a condition precedent. The parties could have used the words "while she is working," which is how defendant construes the language, but that is not what the JOD or the attachment actually states. However, the only other unambiguous component of the childcare expenses provisions is that any obligation defendant might have must

be computed on a week-by-week basis, not, as the trial court impliedly concluded, averaged over any other time period.

The hourly rate specified in the attachment appears to modify *only* the requirement that defendant reimburse plaintiff for "75% of any necessary, unreimbursed, childcare expenses of Plaintiff," so it does not necessarily affect defendant's *additional and independent* obligation under the JOD to compensate plaintiff "for a minimum of five hours and a maximum of 18 hours each week Defendant fails to take" their daughter. Therefore, neither the main JOD nor the attachment appears to set forth an hourly rate or a maximum number of daily hours for the latter. Six hours a day would seem inconsistent with defendant's overnight time, which would constitute 24 hours, as well as with his evening time, which is only three hours; and it logically follows that the hourly rate may also be inapplicable. However, specifying an hourly rate for child care expenses in one context but not the other seems puzzlingly incongruous. Furthermore, the limitation to "each week Defendant fails to take [their daughter]" must also modify different things between the documents: in the main JOD document, it modifies defendant's *additional* obligation to compensate plaintiff beyond just childcare expenses; and in the attachment, it modifies defendant's obligation to compensate for childcare expenses.

In addition, the word "unreimbursed" is troubling, despite its superficial simplicity. Defendant makes the reasonable argument that the word "unreimbursed" implies an expense *already* incurred. Plaintiff makes the equally reasonable argument that none of the expenditures she might conceivably need to make could be done on credit, and requiring her to pay for child care expenses "up front" would not be conducive to her ability to work. Both party's interpretations are equally logical.

A contract is ambiguous if it can reasonably have more than one meaning, if multiple provisions irreconcilably conflict, or if it can only make sense if portions of it are ignored. *Klapp*, 468 Mich at 467; *Hall v Equitable Life Ins Assurance Society of US*, 295 Mich 404, 410-411; 295 NW 204 (1940). When reading the documents as a whole, it is effectively impossible to make sense of both of them without either ignoring something or adding something unwritten.

We are therefore forced to conclude as a matter of law, *Klapp*, 468 Mich at 463, that the JOD and the attachment are ambiguous insofar as we cannot determine the extent to which the attachment was intended to modify, clarify, or supplant defendant's obligations set forth in the main JOD; and we cannot determine what the parties intended "unreimbursed" expenses to mean. The main JOD might have been unambiguous, but the attachment renders it impossible to determine defendant's obligations merely by reading the plain language within the four corners of the documents. The matter must, therefore, be remanded to the trial court to make a factual determination through parol evidence of what the parties actually intended to achieve by the attachment and how it was supposed to alter the JOD. See *Klapp*, 468 Mich at 469; *Hall*, 295 Mich at 410-411.

Because the attorney fee award was derivative, it must also be vacated, and that issue is moot. Nevertheless, in the interests of judicial economy, it is worth addressing the other major points made by defendant.

First, defendant's claim that he was "precluded" from exercising his overnight parenting time with the daughter is not supported or supportable by the record, and he has no entitlement to avail himself of an evidentiary hearing on that point. By his own admission, he exercised at the most only two overnights. Furthermore, his claim that *plaintiff* somehow precluded him from exercising his parenting time is absurd. The record is clear that he found the daughter's disability and his discomfort with caring for her to be the precluding factor. Defendant's argument that he had "essentially been denied due to the special needs of Marissa [sic] and the handicaps that she has" is not a distinction.

The JOD does not formally provide for any excuse for defendant failing to take their daughter. However, as a general matter, a party to a contract cannot *actively interfere with* another party's performance under the contract and then take advantage of any resulting performance failure by that other party. See *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131-132; 743 NW2d 858 (2007). Therefore, *if* plaintiff had in fact actively precluded defendant from exercising his parenting time, defendant's obligation (if any) to compensate plaintiff for failing to take their daughter would be excused. The evidence, however, clearly establishes that plaintiff did not interfere in any way. On remand, the trial court need not make factual findings regarding defendant's exercise of his overnight parenting time.

Second, we reject defendant's contention that the trial court could not fashion a remedy of establishing an arrearage to be added to defendant's ongoing support payments. Presuming defendant actually did owe plaintiff money because of his failures to exercise overnight parenting time, he did so pursuant to a contractual violation each week, and the outstanding amount he owed compounded. Defendant objects to the enforcement mechanism chosen by the trial court, that of deeming the amount he owed to be a child support arrearage to be paid on installment with the rest of his child support obligation. As plaintiff notes, "support" is defined by law as including:

> The payment of money for a child or a spouse ordered by the circuit court, whether the order is embodied in an interim, temporary, permanent, or modified order or judgment. Support may include payment of the expenses of medical, dental, and other health care, child care expenses, and educational expenses. [MCL 552.602(ff)(i)]

A "support order" means "an order entered by the circuit court for the payment of support." MCL 552.602(gg). Clearly, a "support order" can include both the "child support" payments *and* the "childcare expenses" discussed in the JOD. The fact that the JOD discusses them in separate sections is irrelevant, and defendant's contention that the trial court somehow retroactively modified his support obligations by including his arrearage in his ongoing support payments borders on the frivolous.

The trial court's judgment must be vacated to the extent it imposes a $37,440 arrearage and requires payment of attorney fees, and the matter must be remanded for the trial court to take parol evidence to determine what the parties intended to accomplish with the attachment to the JOD. The trial court's order is in all other respects not before us. Depending on what the trial court determines the parties to have contemplated the attachment to the JOD affecting, the trial court is *not* precluded from imposing the same judgment. We expressly do *not* hold that the trial

court's interpretation of the JOD and its attachment is necessarily incorrect, but only that it cannot be determined without further evidence from the parties, which the trial court may take in whatever form or manner it deems proper.

Vacated in part and remanded for further proceedings. We do not retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Peter D. O'Connell
/s/ Elizabeth L. Gleicher