*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBRA NOVAK,

      Plaintiff-Appellant,

v

COMMUNITY LIVING SERVICES, INC., and
COMMUNITY HOUSING NETWORK, INC.,

      Defendants-Appellees,

and

DOMEL, INC., LIBERTY HILL HOUSING
CORP., and MAPLEWOOD DEVELOPMENT
CORP.,

      Defendants.

UNPUBLISHED
February 19, 2019

No. 340414
Wayne Circuit Court
LC No. 16-012526-CH

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

The circuit court summarily dismissed Debra Novak's complaint related to damage at a home owned by Novak. Novak claimed third-party beneficiary status under a contract between Community Living Services, Inc. (CLS), which provided support services to Novak's physically and mentally disabled tenants, and Community Housing Network, Inc. (CHN), which provided property management, home maintenance, and repair services to CLS. Novak was at most an incidental beneficiary of the CLS-CHN contract, and not entitled to directly sue for contractual protection. We affirm.

## I. BACKGROUND

Novak essentially inherited the house in question from her parents. For many years, Novak's parents (the Gilbertsons) lived in the home with two physically disabled foster daughters—VG and KS. By 1999, however, the Gilbertsons were physically unable to care for

VG and KS. CLS, "a [m]anager of a [c]omprehensive [p]rovider [n]etwork [] under contract with the Detroit Wayne Mental Health Authority [] for the management of service providers that offers [support and services] . . . for individuals with intellectual and developmental disabilities enrolled with CLS," began providing VG's and KS's in-home care. CLS essentially had a contractual relationship with VG and KS as their enrolled clients.

In 2001, Novak's stepfather passed away and the house was transferred into her mother's trust. In 2008, VG passed away and Novak took over managing the property for her mother. Title was eventually transferred to her. From 2008 through 2015, Novak leased rooms in the home to disabled adults who were also clients of CLS. Novak had a contractual relationship with the tenants and the tenants, in turn, had a possible contractual relationship with CLS. CLS "sent people out to assist with the disabled individuals who were living" in the home and "managed their care."[1]

The leases Novak entered with her tenants required the tenants to reimburse her for repairs made as a result of the tenant's negligence or wrongful acts and for damages beyond normal wear and tear. The leases also made the tenants responsible for various tasks, such as yearly maintenance of the HVAC and septic systems, clearing gutters and downspouts, replacing broken windows, and repairing and replacing floor coverings, interior wall and ceiling surfaces, water heater, garbage disposal, and large appliances. As the disabled tenants were unable to manage these tasks on their own, CLS entered a "property management agreement" with CHN. Accordingly, Novak had a contractual relationship with her tenants, the tenants had a contractual relationship with CLS, and CLS had a contractual relationship with CHN.

CHN "provide[s] a centralized source of information, referral property and asset management and coordination of housing resource services with an expertise in providing those services to those served by the mental health system." The CLS-CHN contract provided that CHN would "provide or perform . . . contractually required maintenance and repair services on properties that are from time to time identified in writing by CLS." CHN also agreed to conduct inspections of the properties, advise CLS on maintenance and repair issues, and make "environmental modifications" to properties when needed.

In 2015, Novak decided to stop leasing the house. When the tenants moved out, CLS asked CHN to conduct a final inspection.[2] CHN reported several items that needed repair and CLS reimbursed Novak accordingly. When Novak and her husband began tearing out walls and floors to make large-scale renovations, however, they discovered severe water damage likely

---

[1] To that end, CLS subcontracted with companies like Domel, Inc., Liberty Hill Housing Corporation, and Maplewood Development Corporation. Novak filed suit against these companies, but her claims were dismissed by stipulation.

[2] There is some evidence that the CLS-CHN relationship ended in 2012. When considering a summary disposition motion, however, the court must consider the evidence in the light most favorable to the nonmoving party. As CHN agreed to inspect the property in 2015, there is a question of fact whether the CLS-CHN contract had been extended beyond 2012.

caused by leaking toilets that had never been reported or repaired. The water caused structural damage and damage to the ceiling and kitchen in the home's basement. Novak calculated that the damages would cost $100,000 to repair.

Novak filed suit against CHN and CLS for breach of contract and negligence and claimed to be a third-party beneficiary of the contracts between CHN, CLS, and the tenants. As noted, Novak filed suit against many service providers, but stipulated to their dismissal. Novak did not sue the tenants who had resided on the property.

The circuit court summarily dismissed Novak's claims against CHN pursuant to MCR 2.116(C)(10). The court accepted the grounds raised in CHN's motion: (1) CHN could not be liable for breach of contract because there was no contract between it and Novak, (2) Novak was not an intended third-party beneficiary of the CLS-CHN contract; at most the tenants were, and (3) CHN owed no duty to repair or maintain the property, only to inspect and recommend service providers, and therefore could not be liable for negligence. Novak did not appeal the summary dismissal of her claims against CHN.

CLS subsequently sought summary dismissal under MCR 2.116(C)(10) as well. CLS also argued that it never entered a contract with Novak or her predecessors and therefore could not be liable for breach. CLS noted that its relationship with Novak's tenants was not a contractual relationship related to the tenants' leases. Therefore, Novak could not be a third-party beneficiary of any contract between CLS and the tenants. As CLS had no duty to Novak, it also could not be held liable for negligence, it contended.

Novak retorted that she was a third-party beneficiary of CLS's contracts with other service providers, such as CHN, which listed her home as a managed property. Novak further contended that CLS was estopped from denying that it "had no obligation as [it] managed and facilitated support services for the tenants for as long as [Novak could] remember." However, Novak consented to the dismissal of her breach of contract and negligence counts. The circuit court then summarily dismissed the third-party beneficiary count as follows, "CLS is not a party to a contract leasing the property here, the tenants wh[ose] names were mentioned by Defense counsel are the ones that signed the contract, so the Court will grant Defendant's Motion for Summary Disposition."

Novak now appeals the grant of summary disposition in CLS's favor. CLS challenges that appeal. CHN also has replied as an appellee because, if this Court determines that Novak's third-party beneficiary claim is viable, then CHN "could theoretically be liable" because it is a party to the contract with CLS.

## II. ANALYSIS

We review de novo a circuit court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10),

this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Id*. at 139-140 (quotation marks and citations omitted).]

CLS first asserts that the contract between it and CHN was only effective from 2010 to 2012. It was not effective during the 2015 inspection that failed to undercover the water damage, CLS contends, and therefore Novak cannot establish liability. As noted, however, we must consider the evidence in the light most favorable to the nonmoving party—Novak. CHN's agreement to work with CLS in 2015 is evidence of an ongoing contractual relationship. Accordingly, we must proceed as if the CLS-CHN contract remained in effect.

MCL 600.1405 governs third-party beneficiary claims, in relevant part, as follows:

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

The Michigan Supreme Court has interpreted this statutory language as follows:

In describing the conditions under which a contractual promise is to be construed as for the benefit of a third party to the contract in § 1405, the Legislature utilized the modifier "directly." Simply stated, [§] 1405 does not empower just any person who benefits from a contract to enforce it. Rather, it states that a person is a third-party beneficiary of a contract only when the promisor undertakes an obligation "directly" to or for the person. This language indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract. [*Koenig v South Haven*, 460 Mich 667, 676-677; 597 NW2d 99 (1999).]

"[O]nly intended third-party beneficiaries, not incidental beneficiaries, may enforce a contract under § 1405." *Id*. at 680. An intended beneficiary may be part of a class as long as the class is sufficiently described. Id.

For Novak to qualify as a third-party beneficiary, the contract between CLS and CHN "must have demonstrated an undertaking by [them] *directly* for the benefit of [Novak] or for a sufficiently designated class that would include [Novak]." *Shay v Aldrich*, 487 Mich 648, 663; 790 NW2d 629 (2010) (emphasis in original). This is an objective standard, based solely on the contractual language. *Id*. at 664. Novak contends that she falls into a designated class of

-4-

beneficiaries because CLS included her property in a list of those to be managed by CHN under the contract.

CLS contracted with CHN because it wanted "to purchase property management services to maintain the properties in which CLS'[s] mental health customers reside[d]." The contract did not directly identify Novak, the tenants, or the property. While CHN did agree "to provide or perform . . . contractually required maintenance and repair services on the real properties that are from time to time identified in writing by CLS," those properties were not designated as a class to be benefited by the contract. Rather, the only class of individuals described by the contract was those receiving mental health services from CLS. Novak's tenants were mental health customers of CLS. The contract, at most, may have demonstrated an undertaking by CLS directly for the benefit of its mental health customers, but this class did not include Novak.

Because CLS's customers owed Novak certain duties as her tenants, Novak may have incidentally benefited from the CLS-CHN contract. This incidental benefit flowing through the tenants, who have a greater chance of being considered third-party beneficiaries of the CLS-CHN contract, is insufficient to support Novak's third-party beneficiary claim. Accordingly, the circuit court properly dismissed it.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica