*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ESTATE OF FREDERICK L. DECHOW.

EDWARD J. DECHOW,

Appellant,

v

MARY ELLEN MEACHUM and ANN K. DECHOW,

Appellees.

UNPUBLISHED
October 22, 2019

No. 346203
Leelanau Probate Court
LC No. 16-012480-DA

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Edward J. Dechow appeals as of right the probate court's order denying a petition filed by the independent personal representative of the estate of Frederick L. Dechow, deceased, to disburse or release a portion of the decedent's coins to Edward, and instead ordering that the disputed coins be retained by or returned to Mary Ellen Meachum. We affirm.

## I. FACTS

In November 1993, the decedent and his wife executed a will and trust agreement. Under the trust provisions, all assets were to be divided evenly among their descendants after the grantors' deaths. At the time of his death, the decedent's surviving heirs were his five children: Edward J. Dechow, Ann K. Dechow, Mary Ellen Meachum, Frederick J. Dechow and Gilberta L. Dechow.[1] The decedent executed a codicil on June 17, 2015, purporting to dispose of a parcel of real property to Edward and Ann. However, on May 1, 2016, the decedent executed a second will. The May 2016 will changed the distribution of the decedent's estate to his surviving

---

[1] We will refer to the parties by their first names for convenience.

-1-

children, by increasing the amount of the estate Ann received and, in turn, decreasing the remaining four heirs' distribution of the estate and revoking the June 2017 codicil. The May 2016 will also appointed Ann as the estate's personal representative. The 2016 will contained the following language concerning the disposition of certain personal property:

> Note: any other assets held jointly between myself and my children (e.g., coins, investments, vehicles, checking and savings accounts) are not part of the "TRUST" and are bequeathed to the joint holder.

The will did not identify or define "joint holder."

The decedent died on June 11, 2016. At a family meeting on July 16, 2016, Edward distributed coins in his possession that he and the decedent collected together. Edward believed that he and the decedent were the only joint holders of the coins and that the distribution carried out the decedent's verbally expressed wishes. According to Edward's affidavit, Ann provided the family with a copy of the May 2016 will at the same meeting. Edward's affidavit indicates that he disbelieved the validity of the May 2016 will, but apparently he took no further action regarding the will or the coins at that time.

Ann submitted the May 2016 will to probate in November 2016. Edward contested the May 2016 will, which led to a settlement between Edward and Ann. At the time of the settlement, the court appointed an independent attorney as the estate's personal representative. The court order also required all interested parties to return their portions of the decedent's estate assets identified in the May 2016 will to the personal representative. The court granted Edward's attorney 120 days to complete discovery regarding the May 2016 will's validity.

Pursuant to the court's order, Mary Ellen returned to the personal representative most of the coins Edward distributed to her in July 2016. Mary Ellen claimed she had distributed the unreturned coins to her children. She sent the personal representative a check for $4,000 in those coins' stead. The check was never deposited or cashed, and it eventually expired.[2] Ann also returned her portion of the coins to the personal representative. The personal representative later filed a petition to distribute Mary Ellen and Ann's coins to Edward, on the basis Edward and the decedent were the two joint holders of the coins at the time of the decedent's death. Mary Ellen objected to this petition. Following a hearing, the probate court found that Edward's prior actions of distributing the coins to his siblings and his statements about executing his father's verbal wishes refuted his contention that he was a joint holder of the coins. The court entered an order that denied the personal representative's request to disburse the coins, ordered that Mary Ellen could retain any coins in her possession, and ordered the personal representative to return to Mary Ellen any coins she had returned. Edward appeals that decision. Ann has not participated in this appeal.

## II. STANDARD OF REVIEW

---

[2] Because the trial court eventually ruled that Mary Ellen could retain the coins distributed to her, the check and its expiration were rendered moot.

We review the probate court's interpretation of the will de novo. *In re Raymond Estate,* 483 Mich 48, 57; 764 NW2d 1 (2009). However, we give deference to the probate court's factual findings regarding the will, and will reverse the probate court's decision only for clear error. *Id.* To the extent the probate court's decision sounded in equity, "an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

"The primary goal of the Court in construing a will is to effectuate, to the extent consistent with the law, the intent of the testator." *In re Edgar Estate*, 425 Mich 364, 378; 389 NW2d 696 (1986); see also *In re McPeak Estate*, 210 Mich App 410, 412; 534 NW2d 140 (1995). "[I]t is the duty of the courts to carry out as nearly as possible the intent of a testator or testatrix as to the distribution of an estate in so far as such intent has been expressed in the lawful provisions of a will." *In re Howlett's Estate*, 275 Mich 596, 600-601; 267 NW 743 (1936). The court must effectuate the will by the "drafter's intent as indicated in the plain language of the will," so verbal intent is irrelevant. *In re Raymond Estate*, 483 Mich at 52. Furthermore, "[a]bsent an ambiguity, the court is to glean the testator's intent from the four corners of the testamentary instrument." *In re McPeak Estate*, 210 Mich App at 412. The probate court must read a will incorporating all of the will's components, and must harmonize those components with the testator's expressed intent. *In re Raymond Estate*, 483 Mich at 52.

## III. ANALYSIS

We agree with Edward's assertion that he is the joint holder of the coins. However, as we will discuss, we conclude that the probate court arrived at the correct outcome.

As noted above, the will does not identify the joint holder of the coins. However, when ambiguity exists in a will, parties can introduce parol evidence to explain ambiguities and to support their arguments regarding a will's interpretation. *Shay v Aldrich*, 487 Mich 648, 672 (2010). Circumstantial evidence, and reasonable inferences therefrom, may be used to establish a disputed fact. *Skinner v Square D Co*, 445 Mich 153, 164-165; 516 NW2d 475 (1994). "Joint" is defined in relevant part as "united, joined, or sharing with another." *Merriam-Webster's Collegiate Dictionary* (11th ed). *Black's Law Dictionary* (11th ed),[3] defines "joint property" as "[r]eal or personal property held by two or more persons with a right of survivorship." Similarly, *Black's Law Dictionary* defines "joint interest" as "[a]n interest that is acquired at the same time and by the same title as another person's." "Joint ownership" is defined as an "[u]ndivided ownership shared by two or more persons." *Id*.

The plain language of the May 2016 will shows that the decedent understood himself to be a joint owner of various assets, including the coins, with at least one of his children. The evidence shows by unambiguous and necessary inference that Edward must have been the sole joint owner of the coins. Specifically, the evidence indicates that none of the other children had

---

[3] There is no specific entry for "joint owner" or "joint holder" in *Merriam-Webster's Collegiate Dictionary*.

physical possession of any portion of the coin collection at the time of the decedent's death, nor did any of the other children share the decedent's long-standing interest in the coins. The probate court erred by relying on Edward's conduct of distributing the coins. Irrespective of what the distribution may imply about Edward's understanding, Edward's conduct after the decedent's death cannot have any relevance to the *decedent*'s understanding and intent when the 2016 will was drafted.[4] See *In re Cullmann Estate*, 169 Mich App 778, 787-789; 426 NW2d 811 (1988). At the time the May 2016 will was drafted, the decedent unambiguously expected and intended at least one of his children to be a joint holder of the coins. Edward was the only person whose actions proved him to be the joint holder of the coin collection. Under the plain language of the will, Edward was entitled to the coins. The probate court erred in holding to the contrary.

We nevertheless conclude that the probate court properly refused to order the coins returned to Edward, because we conclude that his distribution in July 2016 was a gift to his family members. For this reason, Mary Ellen and Ann may retain the share of the coins they returned to the personal representative. Furthermore, Mary Ellen is not required to issue a new check for $4,000 to replace the expired check she gave to the personal representative.

"In order for a gift to be valid, three elements must be satisfied: (1) the donor must possess the intent to transfer title gratuitously to the donee, (2) there must be actual or constructive delivery of the subject matter to the donee, unless it is already in the donee's possession, and (3) the donee must accept the gift." *Davidson v Bugbee*, 227 Mich App 264, 268; 575 NW2d 574 (1997) (internal quotes omitted). "Acceptance is presumed if the gift is beneficial to the donee." *Id.* (internal quotes omitted). Once the donor of the object executes all elements of gift-giving, the object's title transfers from the donor to the donee. Edward's distribution of the coins satisfies all of the elements of a gift but one: whether his intent to transfer title was "gratuitous."

First, Edward was not legally obligated to comply with the decedent's verbally expressed wishes regarding the coins. Testamentary intent must be expressed in a will. See MCL 700.2101. Historically, Michigan permitted certain properly-witnessed oral statements to constitute nuncupative wills. See R.S. 1846, Title XVI, Ch 68, §§ 5-6; former MCL 702.5-702.6. Nuncupative wills were abolished by 1978 PA 642, enacting the former Revised Probate Code, MCL 700.1 *et seq.* See former MCL 700.993(1). Thus, testamentary intent must now be in writing. MCL 700.2502, MCL 700.2503. Oral expressions may only be used to explain an ambiguity, not to craft an unwritten bequest or devise. See *Waldron v Waldron*, 45 Mich 350, 353-354; 7 NW 894 (1881). Furthermore, Edward's reference to the decedent's "wishes," as opposed to an instruction or directive, suggests merely precatory language that would also be insufficient to create a bequest or devise. See *Crisp v Anderson*, 204 Mich 35, 39-40; 169 NW

---

[4] In any event, the most that can be directly inferred from Edward's distribution of the coins is that he believed he had the right to make that distribution. This does not necessarily imply that he believed himself to be the joint holder at the time, but the distribution is not inconsistent with such a belief.

855 (2018). The decedent's verbally expressed wishes to Edward were, therefore, not legally binding upon him.

"Gratuitous" merely means without obligation or consideration. See *Fultz v Union-Commerce Assoc*, 470 Mich 460, 464; 683 NW2d 587 (2004); *Assoc of Prof and Technical Employees v City of Detroit*, 154 Mich App 440, 444; 398 NW2d 436 (1986); *Schenk v Mercury Marine Div, Lowe Indus*, 155 Mich App 20, 25-26; 399 NW2d 428 (1986). An act "in consideration of natural love and affection" is voluntary. *Cummings v Freer*, 26 Mich 128, 136 (1872). Likewise, a moral obligation does not, by itself, create a legal duty. *People v Beardsley*, 150 Mich 206, 209, 212-215; 113 NW 1128 (1907). The evidence shows that Edward was not under any actual obligation to make the distribution, and it fails to show that Edward subjectively believed himself to be obligated to make the distribution. The evidence shows only that Edward distributed the coins because he believed doing so was proper. Furthermore, given Edward's description of the vastness of the decedent's estate, making the distribution of his own accord, without going through the probate process, is only consistent with a belief that he was the sole owner of the coins and could dispose of them at his discretion. Therefore, Edward cannot ask for the coins' return, because he gave the coins as gifts, which transferred title of the coins.

## IV. CONCLUSION

The probate court arrived at the correct outcome, albeit based on incorrect reasoning. The May 2016 will establishes that Edward was the joint holder of the coins, and so, Edward was solely entitled to receive the coins. However, Edward, in his capacity as joint holder of the coins, executed all of the elements of giving a gift when he distributed the coins to his siblings. Because Edward acted through his own volition to give the coins to Mary Ellen and Ann as gifts, Edward cannot require Mary Ellen and Ann to return the gifts of coins to him. Furthermore, Mary Ellen is not required to issue a replacement check for the $4,000 worth of coins she did not return to the personal representative.

Affirmed. Appellee Mary Ellen Meachum, being the prevailing party participating in this appeal, may tax costs. MCR 7.219(A).

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause