*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL PFEIFER,

        Plaintiff-Appellant,

v

PH TRANSFER COMPANY, INC., formerly known as PORTER AND HECKMAN, INC., and TED CARPENTER,

        Defendants-Appellees,

and

MICHIGAN HEATING AND COOLING, LLC and MICHIGAN ENERGY SERVICES, INC.,

        Defendants.

UNPUBLISHED
October 29, 2020

No. 349334
Oakland Circuit Court
LC No. 2018-166379-CK

Before: BOONSTRA, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's grant of summary disposition to defendant, PH Transfer Company, Inc., and Ted Carpenter,[1] under MCR 2.116(C)(10). Plaintiff contends on appeal that the trial court erred in granting summary disposition as to his breach of contract and negligence claims. Because we find the trial court did not err when it granted summary disposition in defendants' favor, we affirm.

## I. BACKGROUND

---

[1] Defendants Michigan Heating & Cooling, LLC and Michigan Energy Services, Inc. were dismissed by stipulation before the trial court granted summary disposition in favor of PH Transfer and Carpenter.

-1-

Plaintiff contracted with PH Transfer for the installation of a geothermal heating and cooling unit for a home he was constructing. Before the parties' agreement, Carpenter, an employee of PH Transfer, conducted a heat-loss analysis of plaintiff's home and concluded that plaintiff needed a geothermal unit with a 5-ton heating capacity. Defendants represented that a WaterFurnace series 5 model NVV048A would provide 5-ton heating capacity for plaintiff's home, and that unit was subsequently installed. It is undisputed that the manufacturer of the NVV048A unit refers to it as a 4-ton unit, however, WaterFurnace claims that the NVV048A produces the heating capacity of a 5-ton unit. Defendants explain this discrepancy by noting that the units are identified according to their cooling capacity, and oft are able to heat more efficiently than they cool. In any event, plaintiff brought suit under theories of breach of contract and negligence—among other causes of action not relevant to this appeal— claiming that defendants had agreed to install a 5-ton unit and failed to do so, and claiming that the NVV048A unit did not properly heat his home.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff's breach-of-contract claim was without merit because plaintiff received a geothermal unit with a 5-ton heating capacity, which is the deal that plaintiff bargained for. Defendants further contended that plaintiff's negligence claim failed because, apart from providing any evidence that the unit was designed or installed improperly, plaintiff failed to allege any duty on the part of any of the defendants that was separate and distinct from the duties that arose out of contract. The trial court agreed.

The court concluded that the contract between plaintiff and defendants contained a latent ambiguity with respect to defendants' reference to the size of the NVV048A as a 5-ton unit. In the trial court's view, it was ambiguous whether the notation referred to the unit's heating or cooling capacity. In any event, the court concluded that defendants had installed the exact model for which plaintiff had bargained, and that plaintiff had presented no evidence to support his suggestion that the unit did not function as expected. With respect to plaintiff's negligence claim, the trial court agreed with defendants that plaintiff had failed to allege any duty that was separate and distinct from the duties that arose out of contract. The court granted defendants' motion for summary disposition, and this appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We review motions "brought under MCR 2.116(C)(10) by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Summary disposition is appropriate . . . if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. We also review the interpretation of a contract as a question of law reviewed de novo, "including whether the language of a contract is ambiguous and requires resolution by the trier of fact." *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005).

## III. BREACH OF CONTRACT

Plaintiff first contends that the trial court erred when it granted summary disposition in defendants' favor as to plaintiff's breach-of-contract claim. Specifically, plaintiff contends the contract required installation of a 5-ton geothermal unit, and defendants installed a 4-ton unit, thereby breaching the contract. As noted, the trial court concluded the contract was ambiguous with respect to whether the notation in the contract to a 5-ton size referred to the NVV048A's heating or cooling capacity. With reference to extrinsic evidence, the court found that the parties intended to install a geothermal unit that produced a 5-ton heating capacity, which is, in fact, what defendants installed. We can discern no error from the trial court's finding.

"A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). Consideration of extrinsic evidence is generally not permitted to interpret an unambiguous contract. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). If a contract is ambiguous, however, extrinsic evidence is permitted to assist the trial court to determine the intent of the parties. *Id*.

Contract ambiguities are either patent or latent. *Id*. "[E]xtrinsic evidence may not be used to identify a patent ambiguity because a patent ambiguity appears from the face of the document. However, extrinsic evidence may be used to show that a latent ambiguity exists." *Id*.

> A latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings. To verify the existence of a latent ambiguity, a court must examine the extrinsic evidence presented and determine if in fact that evidence supports an argument that the contract language at issue, under the circumstances of its formation, is susceptible to more than one interpretation. Then, if a latent ambiguity is found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue. [*Id*. at 668 (quotation marks and citations omitted).]

We agree with the trial court that a latent ambiguity existed with respect to the designation of the NVV048A as a 5-ton unit in the parties' contract. The contract refers to the NVV048A as having a "5 TON" size, but it is unclear in the contract whether the notation refers to the heating or cooling capacity of the NVV048A, or whether it simply refers to the nomenclature of the manufacturer. What is uncontroverted, however, is that the unit installed in plaintiff's house had a 4-ton cooling capacity and a 5-ton heating capacity, which, according to defendants' unrebutted heat-loss analysis, was what was needed to satisfy plaintiff's heating and cooling needs. Evidence presented in the lower court suggests that plaintiff at one time understood this difference. In an e-mail exchange between plaintiff and Carpenter, plaintiff inquired whether a 4-ton unit would suffice for his home, and Carpenter responded that "a 5 ton is what is needed to heat your home, this is what was quote [sic] on the list you sent." In our opinion, the extrinsic evidence demonstrated the parties' intent was to install a unit that would heat and cool plaintiff's house efficiently, and Carpenter explained that the NVV048A would do so on the basis of its 5-ton heating capacity.

We see no error in the trial court's conclusion that plaintiff intended to contract for a geothermal unit with a 5-ton heating capacity, and that plaintiff did, in fact, receive that unit.

Plaintiff received the benefit of his bargain with defendants, and the trial court did not err when it granted summary disposition in defendants' favor as to plaintiff's breach-of-contract claim.

## IV. NEGLIGENCE

Moving to plaintiff's negligence claim, plaintiff asserts that Carpenter was negligent for installing a 4-ton unit when his heat-loss analysis demonstrated a 5-ton unit was required. We again agree with the trial court that summary disposition was appropriate.

"[T]o establish a prima facie case of negligence, a plaintiff must establish (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) that the damages were caused by the defendant's breach of duty." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Id*. "The duty a defendant typically owes to a plaintiff often is described as an ordinary-negligence standard of care." *Id*. at 499-500. "Under ordinary-negligence principles, a defendant owes a plaintiff a duty to exercise ordinary care under the circumstances." *Id*. at 500. "Whether a duty exists is a question of law for the court to decide." *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012).

"[A] tort action will not lie when based solely on the nonperformance of a contractual duty." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 466; 683 NW2d 587 (2004). However, "[i]f one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner." *Id*. at 465. For a duty to arise in the context of a contractual relationship such that nonperformance of the duty would give rise to a tort action, there must be a "violation of a legal duty separate and distinct from the contractual obligation." *Id*. at 467 (quotation marks and citation omitted). In other words, "the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Id*.

Plaintiff claims that Carpenter was negligent because, after completing a heat-loss analysis showing that plaintiff required a 5-ton unit, Carpenter installed a 4-ton unit. Plaintiff asserts that Carpenter's decision to conduct a heat-loss analysis was an act outside of the contract, thus giving rise to tort liability on Carpenter's part. Plaintiff's claim, however, is not that Carpenter negligently conducted the heat-loss analysis, thereby obtaining a faulty result. In fact, plaintiff does not dispute the findings of Carpenter's heat-loss analysis. Instead, plaintiff's negligence claim is premised on the assertion that despite the heat-loss analysis showing a requirement for a 5-ton unit, Carpenter allowed a 4-ton unit to be installed.[2] Under *Fultz*, Carpenter's decision to install a 4-ton unit instead of a 5-ton unit could only give rise to a breach-of-contract claim and not a negligence claim. Because any duty owed by Carpenter regarding the installation of the

---

[2] Plaintiff makes no mention in this section of his brief as to the difference between the unit's heating and cooling capacities, despite specifically quoting Carpenter as having provided that a 5-ton capacity was required to "heat" plaintiff's home. As noted, the unit installed by defendants had such a heating capacity.

-4-

geothermal unit was not separate and distinct from Carpenter's contractual duty to install the unit, plaintiff did not have a valid negligence claim.[3] See *id*. Therefore, the trial court did not err when it granted summary disposition in defendants' favor as to plaintiff's negligence claim.[4]

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Karen M. Fort Hood

---

[3] Had plaintiff alleged, for example, that Carpenter negligently performed the heat-loss analysis, he may have had a viable claim for the negligent performance of that analysis since the analysis was, arguably, an act outside of the contractual obligations. See *Fultz*, 470 Mich at 467. However, because plaintiff's chief complaint is that the wrong unit was installed, plaintiff's claim sounded in contract, and not in tort.

[4] We note plaintiff's assertion that defendants did not contest the amount of damages plaintiff would incur if he were to replace the installed geothermal unit. Because we affirm that plaintiff had no viable cause of action against defendants, we need not address the issue further.